140 N.J. Super. 16 (1976)
354 A.2d 707
NEW JERSEY PHARMACEUTICAL ASSOCIATION, NORMAN KRITZ, LEONARD LENZEN, JR., AARON SILNUTZER AND NATHAN SINGER, APPELLANTS,
v.
ANN KLEIN, COMMISSIONER OF INSTITUTIONS AND AGENCIES, AND NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES, RESPONDENTS. JOSEPHINE DAVIS, ELOISE AIKENS AND RUBY GRACE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, APPELLANTS,
v.
ANN KLEIN, COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES, AND NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1976.
Decided March 8, 1976.
*18 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Harold A. Kuskin argued the cause for appellants (Messrs. Wilentz, Goldman & Spitzer, attorneys; Messrs. Harold A. Kuskin and Frank J. Cundari, of counsel and on the brief; Mr. Marvin J. Brauth on the brief).
Mr. Michael S. Bokar, Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney *19 General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Harris David, Director, Essex-Newark Legal Services Project, attorney for appellants (Mr. Edward H. Tetelman and Ms. Paula G. Roberts on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondents (Mr. Stephen Skillman, Assistant Attorney General, of counsel and on the brief, Mr. Robert E. Popkin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KOLOVSKY, P.J.A.D.
Although these appeals were submitted to us separately, they appropriately may be disposed of in one opinion since both challenge regulations adopted by the Commissioner of Institutions and Agencies (Commissioner), effective August 1, 1975, in order to reduce payments to be made by the State under its Medicaid program.
Appellants Davis et al. are Medicaid recipients. Their brief challenges only the regulation which requires a co-payment by the Medicaid recipient of 25 cents per prescription, to be collected by the pharmacist.
The appellants in the other appeal are an association of pharmacists and four individual pharmacists. They challenge not only the 25-cent co-payment regulation but also two others which reduce the amount they will receive from the New Jersey Health Service Program for medicines or drugs and prosthetic devices sold to Medicaid recipients.
Prior to the adoption of the challenged regulation the permissible charge for most medicines or drugs was the "maximum cost" thereof (as defined in the regulations) plus a "dispensing fee" of $2.15 in the case of a pharmacy providing a 24-hour a day, 365 days a year service, and $2.05 in the case of other pharmacies. The revised regulation reduces the "dispensing fee" with respect to each class of pharmacy by 25 *20 cents, from $2.15 to $1.90 and from $2.05 to $1.80, respectively. The final regulation challenged reduces the reimbursement to be made for prosthetic devices by 10%.
We find no need to resolve whether the pharmacists have standing to challenge regulations adopted solely for the benefit of Medicaid recipients. Assuming that they do have standing, we have concluded from our review of the record and the arguments presented that there is no merit to any of the criticisms of the new regulations advanced either by them or by appellants in the Davis case.
The statutory impetus for the establishment of federally-assisted, state-administered programs of medical assistance to needy persons (Medicaid) is found in Subchapter XIX of the Social Security Act. 42 U.S.C. § 1396. The act mandates the inclusion of several broad categories of medical services in Medicaid plans submitted by participating states to the United States Department of Health, Education and Welfare, including in-patient and out-patient hospital services and physicians' services. 42 U.S.C.A. § 1396a(a) (13). In addition, a state plan may also provide certain optional services to eligible recipients, including prescribed drugs and prosthetic devices. 42 U.S.C.A. § 1396a(a) (10) (C). The act provides that the mandatory and optional services included in a state plan shall be provided "as far as practicable under the conditions in [each] State * * *." 42 U.S.C.A. § 1396. Cf. 42 U.S.C.A. § 601 (welfare). The "medical assistance" authorized by the act is defined as "payment of part or all of the cost" of the included mandatory or optional services. 42 U.S.C.A. § 1396d(a).
In New Jersey the Medicaid program came into being with the enactment of the New Jersey Medical Assistance and Health Services Act," L. 1968, c. 413 (now N.J.S.A. 30:4D-1 et seq.), with an effective date of January 1, 1970. It is evident from the provisions of that act that assistance is to be provided only within the limits of available appropriations.
*21 So N.J.S.A. 30:4D-2 provides (in language comparable to 42 U.S.C.A. § 1396) that
It is the intent of the Legislature to make statutory provision which will enable the State of New Jersey to provide medical assistance, insofar as practicable, on behalf of persons whose resources are determined to be inadequate to enable them to secure quality medical care at their own expense, and to enable the State, within the limits of funds available for any fiscal year for such purposes, to obtain all benefits for medical assistance provided by the Federal Social Security Act as it now reads or as it may hereafter be amended, or by any other Federal act now in effect or which may hereafter be enacted. [Emphasis supplied]
And N.J.S.A. 30:4D-7 provides in pertinent part that
The commissioner is authorized and empowered to issue, or to cause to be issued through the Division of Medical Assistance and Health Services all necessary rules and regulations and administrative orders, and to do or cause to be done all other acts and things necessary to secure for the State of New Jersey the maximum Federal participation that is available with respect to a program of medical assistance, consistent with fiscal responsibility and within the limits of funds available for any fiscal year, and to the extent authorized by the medical assistance program plan; to adopt fee schedules with regard to medical assistance benefits and otherwise to accomplish the purposes of this act, including specifically the following:

* * *.
It is undisputed that the state appropriation for the Medicaid program for the fiscal year 1975-1976  $202,404,000  necessitated that approximately $26,400,000 of state funds and $26,400,000 of federal funds be eliminated from prior projected Medicaid expenditures for that fiscal year. Appellants do not challenge the Commissioner's conclusion that what she describes as the "budgetary shortfall" made it necessary to make changes in the existing programs pending resolution of the funding problem.
Their challenges are to the legality and reasonableness of the changes made.

*22 The co-payment regulation

We find no substance to appellants' contention that the co-payment regulation violates and does not comply with federal and state enabling acts and regulations. The contrary is true. The federal legislation expressly grants authority to the State to require co-payments by recipients provided it is "nominal in amount (as determined in accordance with standards approved by [the federal authorities] and included in the [state] plan) * * *." 42 U.S.C.A. § 1396a(14) (A) (ii). Further, it may be noted that the co-payment regulation which appellants challenge was thereafter approved, as of its effective date, by the Federal Department of Health, Education and Welfare.
Nor is there, as appellants assert, any provision in the state legislation which precludes the Commissioner from requiring the co-payment. Cf. N.J.S.A. 30:4D-13; N.J.S.A. 30:4D-6(c).
Appellants' reliance on the last sentence of N.J.S.A. 30:4D-6c. in support of their argument is unwarranted. Read in the context of the entire subsection, which provides that
Payments for the foregoing services, goods and supplies furnished pursuant to this act shall be made to the extent authorized by this act, the rules and regulations promulgated pursuant thereto and, where applicable, subject to the agreement of insurance provided for under this act. Every provider making a claim for payment pursuant to this act shall certify in writing that no additional amount will be charged to the recipient for the services, goods and supplies furnished,
the last sentence merely requires every provider making a claim for payment from the State to certify that he has not charged the recipient any additional amount beyond that authorized by the act and the "rules and regulations promulgated pursuant thereto * * *." It does not prohibit the provider from collecting the 25-cent co-payment called for by the regulation.
*23 Appellant Davis' suggestion that approval by the State Medicaid Commission, N.J.S.A. 30:4D-3(i) was required for valid adoption of the regulation is frivolous. Cf. N.J.S.A. 30:4D-8.
Finally, the record furnishes no support for appellants' claim that the regulation is unreasonable and, in the words of the Davis brief, denies Medicaid recipients "the right to good health." The burden of establishing that the regulation is unreasonable is on appellants. The regulation is entitled to the "customary rebuttable presumption of validity and regularity afforded to administrative regulations generally." Motyka v. McCorkle, et al., 58 N.J. 165, 181 (1971). Nothing in the record even begins to overcome the presumption of reasonableness of the action taken by the Commissioner in response to the reduced budget  action which is far less drastic than the action which the State could have taken under the authority of 42 U.S.C.A. § 1396a(10) (C) and N.J.S.A. 30:4D-6(b) (6)  elimination of the optional program it had adopted to provide assistance for the cost of pharmaceutical drugs.

The "dispensing fee" and the prosthetic device regulations
The Commissioner had originally proposed a regulation requiring a 50-cent co-payment by each recipient. However, after a preliminary hearing it was concluded that such a payment would impose too onerous a burden on the recipient. The desired 50-cent per prescription reduction was then accomplished by regulations reducing the proposed co-payment required of recipients to 25 cents and reducing the "dispensing fee" being paid pharmacists by 25 cents.
A review of the applicable statutes and regulations dealing with Medicaid payments for drugs and medicines will be helpful in evaluating the arguments presented in the pharmacy appellants' attack on the validity of the "dispensing fee" reduction.
The "Pharmacy Manual," N.J.A.C. 10:51-1.1 et seq., embodies the regulations applicable to "pharmaceutical services." *24 Those regulations were adopted pursuant to the mandate embodied in N.J.S.A. 30:4D-12 (as well as in the Social Security Act, 42 U.S.C.A. § 1396a(a)(30)) that
Subject to the limitations [not applicable to this case], the department shall (a) develop and employ such methods and procedures relating to the utilization of and the payment for medical care and services available under the plan as may be necessary to safeguard against unnecessary utilization of such care and services;
(b) Assure that payments (including payments for any drugs provided under the plan) are not in excess of reasonable charges (reasonable costs in the instance of inpatient hospital services) consistent with efficiency, economy and quality of care; and
(c) Prescribe standards that participating providers must meet. [Emphasis supplied]
In addition, a regulation promulgated by the Secretary of Health, Education and Welfare provides in pertinent part as follows:
A State plan for medical assistance under title XIX of the Social Security Act must:

* * * * * * * *
(3) Provide that payments for care or services are not in excess of the upper limits described in paragraph (b) of this Section.

* * * * * * * *
(6) Provide that fee structures will be established which are designed to enlist participation of a sufficient number of providers of services in the program so that eligible persons can receive the medical care and services included in the plan at least to the extent these are available.
(7) Provide that participation in the program will be limited to providers of service who accept as payment in full, the amounts paid in accordance with the fee structure * * *.
45 C.F.R. § 250.30(a)(3), (6) and (7). After stating that a participating state "may pay less than the upper limits" for care and services provided under a state plan (45 C.F.R. § 250.30(b)), the regulation provides, in pertinent part, with respect to state reimbursements to pharmacists for drugs dispensed to Medicaid recipients: *25 * * * (2) Drugs. (i) The upper limit for payment for prescribed drugs  whether legend items (for which a prescription is required under Federal law) or nonlegend items  shall be based on the following methods.
(A) Cost as defined by the State agency plus a dispensing fee. The dispensing fee should be ascertained by analysis of pharmacy operational data which includes such components as overhead, professional services, and profit. Indices to be considered should include payment practices of other third-party organizations, including other Federal programs. Both the cost and the dispensing fee may vary according to the size and location of the pharmacy and according to whether the dispensing is done by a physician or by an outpatient drug department of an institution, and according to whether the drug is a legend or a nonlegend item. In evaluating a dispensing fee by analysis of operational data, the objective of the State agency should be to insure that the average prescription price paid by the State agency does not exceed the average prescription price paid by the general public.
(B) The method described for Other Services in subparagraph (3) (i) of this paragraph.
45 C.F.R. § 250.30(b) (2) (i) (A) and (B). Subparagraph (3) (i) (B), referred to in the foregoing provision, states in pertinent part:
The upper limits for payment shall be customary charges which are reasonable. The prevailing charges in the locality for comparable services under comparable circumstances shall set the upper limit for payment. * * *
Appellants argue that the reduced dispensing fee is unreasonable; that it has had a general adverse effect on pharmacists and the practice of pharmacy in this State; and that it has caused some and will cause more pharmacists to refuse to service Medicaid recipients.
The asserted adverse effect on pharmacists, standing alone, is not a relevant consideration. The provisions of the state and Federal acts and regulations authorizing payment for drugs, medicines and prosthetic devices were not enacted for the benefit of pharmacists. They were adopted only for the benefit of Medicaid recipients, to insure that if a state elects as part of its Medicaid program to pay  although it does not have to  for such items, the payments *26 authorized are sufficient to enable the Medicaid recipient to purchase those items from available providers.
Moreover, the record does not support appellants' assertion that the reduction in the dispensing fee has in fact resulted, or may reasonably be expected to result, in there being an insufficient number of pharmacists willing to act as providers under the Medicaid program to insure that recipients can purchase the items to which they are entitled under the program.
Appellants next argue that the reduction in the dispensing fee is invalid because it was not preceded by a departmental "analysis of pharmacy operational data [including] such components as overhead, professional services and profits," a study which they contend is mandated by the federal regulation, 45 C.F.R. § 250.30(b) (2) (A) quoted above.
In evaluating this argument it may be noted at the outset that no one suggests that such study was undertaken before the dispensing fees provided by the prior regulation, $2.15 and $2.05, were fixed. We agree that despite the cost and expense involved, such a study would be desirable to insure not only that the payments authorized are adequate but also, and equally as important, that they "are not in excess of reasonable charges * * * consistent with efficiency, economy and quality of care." N.J.S.A. 30:4D-12(b). Contrary to what appellants argue, the federal regulation (both in its present form and in an amendment to be effective April 26, 1976, 40 F.R. 34516), by its use of the word "should," merely recommends, it does not mandate, such a study.
Further, it is not to be overlooked that after recommending an analysis of pharmacy operational data, the paragraph in its present form continues with the additional recommendation that
Indices to be considered should include payment practices of other third-party organizations, including other Federal programs.
The recommendation as to the indices to be considered has *27 been changed to a mandate by the substitution in the amendment to be effective April 26, 1976 of the word "shall" for the word "should" in the sentence just quoted. But no such substitution was made in the prior sentence recommending an analysis of pharmacy operational data.
It is apparent that the Department gave substantial weight, as it was authorized to do, to a comparison of the dispensing fees fixed by its regulation with those fixed by other states. Such a comparison discloses  as appears from the uncontradicted assertions in an affidavit submitted by the Director of the Division of Medical Assistance and Health Services in opposition to an application for a stay pending appeal  that the reduced "dispensing fees of $1.90 and $1.80 are still higher than those in effect in many other similar states * * * and are consistent with the national average of $1.85."
Although the pharmacists' notice of appeal also challenged the regulation reducing by 10% the payment to be made for prosthetic devices, they have not asserted in their argument on appeal that the 10% reduction is unreasonable.
Their only criticism of that regulation is included in their contention that all three challenged regulations "violate the due process and equal protection clauses of the Federal constitution."
However, we are satisfied that appellants' constitutional arguments are so lacking in merit as not to warrant any discussion in this opinion.
We hold that all three challenged regulations are valid.