PETITION OF AMERICAN TELEPHONE & TELEGRAPH COMPANY OF NEW JERSEY FOR THE RIGHT TO EXERCISE THE POWER OF EMINENT DOMAIN.

AMERICAN TELEPHONE & TELEGRAPH COMPANY OF NEW JERSEY, PETITIONER-APPELLANT, AND SADIE P. RANZENHOFER, ADELE A. ANKIEWICZ, ALFRED OLEJARZ AND DOLLY M. SOLOMON, A/K/A DOLLY SOLOMON MEYERS, OBJECTORS-RESPONDENTS, AND THE BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1973—Decided May 7, 1974.

240

Before Judges HANDLER, MEANOR and KOLE.

*Mr. Howard Rosen* argued the cause for petitioner-appellant (*Messrs. Rosen and Weiss,* attorneys; *Mr. Sidney D. Weiss,* of counsel; *Mr. Walter G. Reinhard* on the brief).

*Mr. Theodore Meth* argued the cause for objectors-respondents (*Messrs. Meth, Wood, Neff & Cooper,* attorneys; *Mr. Robert M. Wood,* on the brief).

*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey filed a statement in lieu of a brief on behalf of the respondent Board of Public Utility Commissioners (*Mr. Joseph W. Ferraro, Jr.,* Deputy Attorney General of counsel).

The opinion of the court was delivered by
HANDLER, J. A. D.   The Board of Public Utility Commissioners dismissed the petition of American Telephone & Tele-

graph Company of New Jersey seeking to exercise the power of eminent domain pursuant to *N. J. S. A.* 48:3–17.6 *et seq.* and *N. J. S. A.* 48:17–9.1. The interest sought to be condemned was an easement for a right-of-way for underground communications facilities over lands owned by the individual respondents located in the Township of Jefferson, Morris County.

The decision and order of the Board were based substantially upon the reasons and recommendations of the hearing examiner. The examiner concluded that petitioner had committed a willful trespass, in direct violation of *N. J. S. A.* 48:3–17.7. The examiner's report also indicated that the Board lacked power to authorize condemnation because payment had not been made in advance of the taking of the property. The Board, in adopting this report, was of the further opinion that petitioner had "expropriated" the property and that the property owners had not acquiesced in petitioner's use of their property. It also rejected the argument that "extenuating circumstances" should enable petitioner to now exercise the right to institute condemnation proceedings because petitioner was at fault for creating such circumstances. It further disagreed with petitioner's contention that barring condemnation would result in "drastic inequities" and would be detrimental to the public interest because it would threaten the suspension of an important public work.

Essentially these are the facts. Petitioner was responsible for the acquisition and construction of the New Jersey segment of an underground coaxial cable which runs from Boston to Miami and which interconnects all of the major cities on the east coast and through them the remainder of the nation. The cable carries long distance telephonic communications, private line services for major business concerns, and numerous critical services for the Federal Government. It was described in testimony as "a vital link in the long distance message network and * * * one of the backbone

facilities, which makes up the military communications network along the east coast."

Petitioner followed its usual practice to acquire easements. It took an aerial photograph of the proposed route and transposed land ownership information from the local tax maps and lists. This showed that the land in question was owned by a Walter F. Dunn. Negotiations were conducted and an easement of about 3,700 feet was purchased from Dunn over what was presumed to be his property. Petitioner cleared the easement area in July 1968 and began preparations for laying the cable.

On November 12, 1968 petitioner was informed by the township assessor that it had made an error as to ownership. Petitioner then ascertained the names of the true owners who were immediately notified and a meeting was arranged to view the property and discuss the damages. At the time this error was discovered the work of burying the cable was not quite finished. This work, which entailed some dynamiting, was completed during the early meetings of the parties. It is clear that petitioner concluded this job of laying the cable with the expectation that the owners would be fully compensated through the negotiation of a successful settlement.

The first meeting of the parties was on November 26, 1968. From then until September 1971 these negotiations continued. Petitioner made numerous offers which were rejected by respondents. When it became apparent that the efforts to negotiate a settlement were futile, the utility filed its petition.

■ The power of eminent domain is the power to "appropriate and control [private] property for the public benefit as the public safety, necessity, convenience, or welfare" requires. *Valentine v. Lamont,* 13 *N. J.* 569, 575 (1953), *cert.* den. 347 *U. S.* 966, 74 S. Ct. 776, 98 L. Ed. 1108 (1954) ; see also, *e. g., Bergen County Sewer Auth. v. Little Ferry,* 5 *N. J.* 548, 552 (1950), *cert.* den. 344 *U. S.* 865, 73 S. Ct. 105, 97 L. Ed. 670 (1952). The Constitution and

the statutes of the State of New Jersey recognize the power of eminent domain in both political subdivisions of the State and in private corporations and individuals. *N. J. Const.* (1947), Art. 1, ¶ 20; Art. IV, § VI, ¶ 3; *N. J. S. A.* 20:3–1 *et seq.; N. J. S. A.* 48:3–17.6 *et seq.; N. J. S. A.* 48:17–9.1.

It has been held that where the right of eminent domain is exercised in favor of an individual or private corporation, compensation should precede the taking. *Loweree v. Newark,* 38 *N. J. L.* 151, 154 (Sup. Ct. 1875); *Redman v. Philadelphia, Marlton and Medford R. R. Co.,* 33 *N. J. Eq.* 165, 168 (Ch. 1880). In connection with the power of eminent domain confirmed in utilities, this obligation of prepayment before a taking is fixed by statute. *N. J. S. A.* 20:3–33 provides:

> Individuals and private corporations vested with the authority of condemnation may, upon the filing of the report of the commissioners and upon payment, to the parties entitled thereto or into court, of the amount awarded as provided in this act, take possession of the land * * * for the purposes for which the same was authorized to be taken.

Without denigrating the force of this mandate, the requirement of prepayment has not been inflexibly or rigidly imposed in all cases. 3 *Nichols, The Law of Eminent Domain* (3d ed. 1965), § 8.713 at 226; 27 *Am. Jur.* 2d, *Eminent Domain* § 494 (1966).

In addition, *N. J. S. A.* 48:3–17.7 provides:

> The power of condemnation shall not be used or enforced by any such public utility unless the necessary land or other porperty or any interest therein as stated in this chapter, cannot be acquired from the owner by reason of disagreement as to the price * * *. [T]he power of condemnation shall not be used or enforced by any public utility until and unless such utility shall have applied to the Board of Public Utility Commissioners upon the petition of such utility and the board, after due notice, including notice to the owner or owners of the land or other property * * * and public hearing, shall have found that the land or other property or interest therein desired is reasonably necessary for the service, accommodation, convenience or safety of the public, and that the taking of such land or other prop-

erty or interest therein is not incompatible with the public interest and would not unduly injure the owners of private property.

■ The limitations contained in these enactments are important procedural safeguards which should, of course, be followed. *Manda v. Orange,* 75 *N. J. L.* 251 (Sup. Ct. 1907), aff'd 78 *N. J. L.* 630 (E. & A. 1910), aff'd 82 *N. J. L.* 686 (E. & A. 1912); *Vreeland v. Jersey City,* 54 *N J. L.* 49 (Sup. Ct. 1891). Their essential purpose, however, is to protect landowners from any willful violation or abuse in the exercise of the power of eminent domain by a public utility. A cognate aim of the statutes and constitution authorizing eminent domain is to enable certain private corporations affected with the public interest to obtain private property where this is necessary to further the general welfare. In reference to public utilities, a basic objective in their proper regulation, including supervision of their condemnation powers, is the assurance of safe, adequate, proper and uninterrupted service. *N. J. S. A.* 48:2–23.

■ Where a public utility with the power of eminent domain in good faith erroneously enters the lands of another prior to a required prepayment and preliminary administrative determination required by statute, an absolute bar of the exercise of the power of eminent domain should not be imposed if this in itself will be inimical to the public welfare.

In a related context, it was stated in *Nelson v. N. J. Short Line R. R. Co.,* 73 *N. J. Eq.* 187 (Ch. 1907), aff'd 74 *N. J. Eq.* 855 (E. & A 1908):

In such a case, — *i. e.,* where there has been no willful or intentional violation of the complainant's rights — if the defendant corporation has the right to condemn the complainant's land and stands ready to institute and diligently prosecute condemnation proceedings, and also to pay into this court a sum of money sufficient to cover any possible award which may be made to the complainant in the condemnation proceedings, it would seem that the complainant is placed in substantially the same position that he would have occupied if the defendant had proceeded originally in strict compliance with all constitutional and statutory requirements. [73 *N. J. Eq.* at 189–190]

In a similar vein, see also *Harris v. L. P. and H. Construction Co.*, 441 *S. W.* 2d 377 (Mo. App. 1969); *Wray v. Mott*, 83 *N. J. L.* 110 (Sup. Ct. 1912), aff'd 84 *N. J. L.* 769 (E. & A. 1913); *Menge v. Morris and Essex R. R. Co.*, 73 *N. J. Eq.* 177 (Ch. 1907); *Paterson, Newark and New York R. R. Co. v. Kamlah*, 42 *N. J. Eq.* 93 (Ch. 1886), aff'd 47 *N. J. Eq.* 331 (E. & A. 1890); *Caruthers v. Peoples Natural Gas Co.*, 155 *Pa. Super.* 332, 38 *A.* 2d 713 (Super. Ct. 1944): *Clarke v. City of Greer*, 231 *S. C.* 327, 98 *S. E.* 2d 751 (Sup. Ct. 1957).

Where, as here, a public utility has proceeded in good faith under the mistaken belief that it was entitled to enter upon certain property, it should not be deprived of the right to seek the exercise of eminent domain in a proper proceeding before the Board. Upon such an application, the Board should determine, as required by *N. J. S. A.* 48:3–17.7, whether the land taken is "reasonably necessary for the service, accommodation, convenience or safety of the public," and the proposed taking is otherwise "not incompatible with the public interest." It should decide as well whether the owners of the property will be "unduly injured."

There is no insurmountable reason why these inquiries cannot or should not be pursued merely because a physical taking or occupancy has already occurred. In a comparable situation in *Ossman v. Mountain States Tel. & Tel. Co.*, 511 *P.* 2d 517 (Colo. App. 1973), the utility inadvertently crossed a portion of plaintiff's land with a cable. When plaintiff later discovered the intrusion upon his land, he immediately contacted the utility and demanded compensation. Subsequent negotiations were fruitless. The utility contended that plaintiff's only remedy was that of inverse condemnation. The trial court, however, ruled that it was a trespasser and awarded both compensatory and punitive daamges. It also awarded a permanent easement. On appeal, it was held that one who possesses the power of eminent domain cannot be a trespasser under circumstances where it has inadvertently pos-

sessed land, which it intends to use for a public use, without proceeding in eminent domain.

If it appears, as it does here, that the taking was inadvertent and did not involve a "willful aggression," there is no sensible justification for a "punitive application" of the laws. *Nelson v. N. J. Short Line R. R. Co.; supra,* 73 *N. J. Eq.* at 190.

While recognizing that petitioner's failure to comply with the statutory prerequisites was not an "absolute bar", the Board, nevertheless, effectively foreclosed petitioner from pursuing its right to exercise the power of eminent domain. It stated that "petitioner may negotiate further with respondents," and that if the negotiations fail (which is predictable), then petitioner would be required to relocate the communication facilities, which the Board assumed could be done "without disrupting service."

The Board's disposition in this manner provides no real solution to the legal dilemma occasioned by petitioner's mistaken occupancy and use of respondents' land. The Board in effect has mandated indirectly a form of relief in the nature of an injunction or ejectment. As noted, the record amply supports the finding that petitioner mistakenly entered upon respondents' property and has throughout acted in good faith recognizing fully its obligation to respond with just compensation to the owners. Consequently, the strict sanctions envisaged by the Board are uncalled for.

Accordingly, we reverse and remand. We direct that petitioner be granted the relief sought by its petition and that it be permitted to seek the right to exercise the power of eminent domain. Jurisdiction is not retained. No costs.