214 N.J. Super. 148 (1986)
518 A.2d 748
NYT CABLE TV, PLAINTIFF-RESPONDENT AND PETITIONER-RESPONDENT,
v.
HOMESTEAD AT MANSFIELD, INC., HOMESTEAD AT MANSFIELD HOMEOWNERS ASSOCIATION, INC., MICHAEL LAINO AND DANIEL QUIGLEY, DEFENDANTS-APPELLANTS AND RESPONDENTS-APPELLANTS, AND NEW JERSEY BOARD OF PUBLIC UTILITIES, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1986.
Decided November 19, 1986.
*151 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and GRUCCIO.
Philip B. Seaton argued the cause for appellants (Fredreick W. Hardt on the brief).
Peter J. Pizzi argued the cause for respondent NYT Cable TV (Connell, Foley & Geiser, attorneys; Peter J. Pizzi, on the brief; Truman W. Eustis, III, of counsel).
Raymond C. Barzey argued the cause for respondent New Jersey Board of Public Utilities (W. Cary Edwards, Attorney *152 General, attorney; Andrea M. Silkowitz, Deputy Attorney General, of counsel; Raymond C. Barzey on the brief).
Francis R. Perkins argued the cause for amicus curiae New Jersey Cable Television Association (LeBoeuf, Lamb, Leiby & MacRae, attorneys; Francis R. Perkins, Cynthia D. Benn and Ruth A. Bosek, on the brief).
Meyner & Landis filed a brief amicus curiae for Ocean Cablevision Associates (Jeffrey L. Reiner and Alice J. Guttler, on the brief).
LeBoeuf, Lamb, Leiby & MacRae filed a brief amicus curiae for TKR Cable Company (Thomas C. Kelly and Ruth A. Bosek, on the brief).
Schenck, Price, Smith & King filed a brief amici curiae for Hovbilt, Inc., K. Hovnanian at Piscataway, Inc., Society Hill at Piscataway Condominium Association, Inc., K. Hovnanian at Bernards, Inc., Society Hill at Bernards Condominium Association, Inc., RCK Cable Company, and Channel One Systems, Inc. (W. James MacNaughton, Douglas S. Brierley, John M. DeMarco and Anne E. Aronovitch, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on consolidated appeals from an order issued in the Superior Court, Chancery Division, a decision of the Board of Public Utilities (BPU) in a contested case and an order of the BPU adopting a rule. The controversy involves a dispute between respondent NYT Cable TV (NYT), a cable television company, and appellant Homestead at Mansfield, Inc. (Homestead), developer of a 1,187 unit planned adult community in the Township of Mansfield, concerning the right of NYT to install its cable facilities within the development and, if it has such a right, the compensation it must pay for its exercise. In addition, Homestead at Mansfield Homeowner's Association (Association) and Michael Laino and Daniel Quigley, officers and owners of Homestead, were parties or participants in the underlying proceedings with interests *153 similar to Homestead and are appellants here. Thus we refer to Homestead, the Association, Laino and Quigley collectively as appellants.
An understanding of the case requires a description of the development. Homestead has been constructing housing units for sale to individual purchasers who acquire their own units in fee. The project has been registered with the Department of Community Affairs pursuant to the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 et seq. The purchasers become members of the Association which owns or will own the common property in the development such as the club house, roads and recreational lands. Thus the development differs from a condominium project in which the unit purchasers have undivided interests in the common property. The activities of the Association are financed by monthly fees assessed to the members. Homestead's plans include installation of a bi-directional cable television system to supply ordinary television service received by a master antenna to the unit holders and to carry signals that can be directed from each unit to central locations within the development. This bi-directional system includes a central monitoring station in a guardhouse at an entrance to the development. The system allows residents to summon medical or other assistance by pushing a button near the front door of each unit. Homestead's plans also include construction of a television studio in the club house so that the residents will be able to develop their own programs and send them to each unit.
NYT is authorized to provide cable television service in the Township of Mansfield, including the area of Homestead's development, by a municipal consent ordinance and a certificate of approval issued by the BPU. Inasmuch as the Homestead system could supply some of the same programming as NYT carries, it is obvious that there is a potential for controversy between appellants and NYT. Not surprisingly a dispute did arise. On January 11, 1982, following an inquiry from NYT to Homestead concerning the installation of cable in the development, *154 Homestead's attorney, Frederick W. Hardt, Esq., advised NYT that Homestead wanted a bi-directional cable system installed. In response, on January 21, 1982 Don Dworkin, a group director of engineering of NYT, wrote Hardt that NYT was willing to provide the bi-directional system but without security or medical services. NYT suggested that a less costly and more reliable bi-directional system could be provided through utilization of a "twisted-pair wire" technique. On May 17, 1982, Hardt wrote NYT and described the system and services Homestead wanted installed. Hardt expressed strong reservations concerning NYT's ability to provide a system meeting those criteria and indicated that the "twisted-pair" wire technique would not provide the flexibility and versatility desired and required by Homestead. He stated that because of the inadequacies of the NYT system, Homestead would install the bi-directional system. Hardt also said that NYT could not have access to the development for its business activities.
Insofar as we can ascertain from the record, NYT did little during the next two years to facilitate installation of its system. Homestead, however, went ahead on its own and on March 11, 1983, formed a cable television company, Homestead Cable T.V. Inc., which, to implement Homestead's plan, developed an "uncertificated satellite master antenna television" (SMATV) system costing somewhere between $175,000 and $200,000. NYT, however, reactivated the matter by a letter from its attorney to Hardt on February 1, 1984 asserting it had the right of access to the development and would bring an action necessary to secure the right. Hardt by letter of February 13, 1984 responded that it was doubted that NYT was entitled to the access claimed.
On March 23, 1984, NYT filed a complaint in the Superior Court against appellants claiming that under N.J.S.A. 48:5A-49 it had a right of access to the development. Thus it sought a judgment enjoining appellants from interfering with the access and a temporary restraining order against appellants precluding *155 them from interfering with its access to the development.[1] A hearing was held on this application on March 26, 1984 at which time the motion judge orally ruled that NYT was entitled to access, the determination of the details of which was within the jurisdiction of the BPU. On July 3, 1984 he signed an order transferring the matter to the BPU to determine the "circumstances and conditions" of the access but retaining jurisdiction over the balance of the complaint. One year later on July 3, 1985 the judge signed an order on the supposed authority of R. 4:42-2 providing that the order of July 3, 1984 was "hereby certified as a Final Judgment capable of Appellate review" as there was no just reason for delay "in the review of the Order" and reserving the remaining issues which included a damages claim until "all Appellate proceedings have concluded." The order of July 3, 1985 correctly characterized the earlier order as interlocutory. On July 16, 1985 appellants appealed from the order of July 3, 1984.
Inasmuch as the judge had ruled that the BPU should determine the method of access, on April 2, 1984 NYT filed a petition with the Office of Cable Television of the BPU against appellants seeking access to the development. After appellants answered, the case was transmitted to the Office of Administrative Law as a contested case. A prehearing order was entered on August 9, 1985 specifying that the issues in the case were (1) whether NYT was entitled to access to the development; (2) whether the BPU could grant immediate access or could only authorize NYT to proceed under the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 et seq.; (3) whether, assuming NYT otherwise had a right of access, it should be curtailed because of the public interest in the bi-directional system; (4) the terms and conditions of access; and (5) whether the BPU could make the determination of the amount of just compensation.
*156 At the subsequent hearing NYT demonstrated that it would install its lines, which were 26 miles in length, by making use of existing telephone and electricity easements. While there was evidence that the NYT and Homestead systems are not technically incompatible, absent cooperation between the parties the systems would operate separately making it improbable that a resident would pay for both services. Thus if a resident subscribed to the NYT system it would limit the effectiveness of the security aspects of the bi-directional system. Further, selection of the NYT system by a large number of residents could compromise the economic feasibility of the bi-directional system.
The parties presented expert testimony on the calculation of just compensation. William Ard, a licensed real estate broker in New Jersey specializing in appraisals, testified for NYT that there would be no damage or reduction in value to the property from NYT having access and thus just compensation for the access was $1.00. Ard, however, did not do any market studies to support his result. Rather, in his words, he "applied reason to the problem."
Harry A. Carroll, an appraiser and president of a real estate appraisal firm which concentrates almost exclusively on appraisals, market studies and economic feasibility studies, and who was familiar with the Homestead development having done appraisals there, testified for appellants. He developed figures based on linear feet calculations and arrived at the conclusion that NYT should pay $3.20 per linear foot in improved areas and $2.50 per linear foot in unimproved areas.
On March 11, 1985 the administrative law judge issued his initial decision. He ruled that NYT should have access to the development and he approved its proposed method of installation. He also determined that NYT should pay $1.00 as just compensation for the taking. On May 3, 1985 the BPU adopted the initial decision as a final order except for a modification deleting the award of just compensation as that issue was left *157 open for completion of a then pending rulemaking proceeding before the BPU establishing just compensation in cable access cases.[2] On May 28, 1985 appellants appealed from the decision of May 3, 1985.
The third appeal is from the order in that rulemaking proceeding which was a response to Judge Cohen's opinion in Princeton Cablevision, Inc. v. Union Valley Corp., 195 N.J. Super. 257 (Ch.Div. 1983), sustaining the constitutionality of N.J.S.A. 48:5A-49 which provides that a tenant cannot be denied cable television service by the owner of the property or his agent. Judge Cohen indicated that the BPU should adopt rules to govern the compensation to the owner of the property serviced by cable television. 195 N.J. Super. at 270-271 Accordingly the BPU through its Office of Cable Television on or about July 2, 1984, promulgated a notice of pre-proposal of a new rule to deal with the compensation to property owners for the installation of cable facilities. This notice was distributed to parties and attorneys involved in previous access cases.
A public hearing on the rulemaking proceeding was held on September 12, 1984, with testimony advancing various theories for determining just compensation for takings authorized by N.J.S.A. 48:5A-49. William Ard, who had testified in the NYT case, testified consistently with his evidence there. He indicated that in the four or five cases he had examined, cable had been installed without damage to the property owners. Indeed, it may have enhanced the value of the property. Thus the property owner should receive no substantial compensation for installation of cable. Other theories advanced suggested that compensation be based on a percentage of monthly subscriber revenue, a comparision of compensation for analogous rights and a "before and after" theory of damage valuation which bases compensation on the difference between the fair market *158 value of the property before and after the taking. In substance Ard's testimony incorporated the "before and after" method.
Following this hearing, the Office of Cable Television proposed a new rule, N.J.A.C. 14:18-3.10, providing essentially for the use of the "before and after" theory of compensation. After comments were received from interested persons, the BPU on May 31, 1985 issued an order adopting N.J.A.C. 14:18-3.10 which uses the "before and after" method of compensation for the owners of multi-family properties. The rule established $1.00 as the basic consideration to be paid the property owner for the installation of cable facilities and placed the burden to show this was inadequate on him. In its order, the BPU cited to the language and holdings of Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), Princeton Cablevision, supra, and the judge's decision in the trial court proceeding in this matter as recognizing its authority to resolve the question of just compensation. In Loretto the Supreme Court of the United States held that if the owner of the property must grant access to a cable television company for permanent physical occupation on his property he has suffered a taking so he must be granted fair compensation. On June 18, 1985, Homestead and the Association filed an appeal challenging the adoption of the rule, the third matter before this court. Subsequently the three appeals were consolidated and we decide them in this opinion.
On this appeal appellants contend that N.J.S.A. 48:5A-49 unconstitutionally authorizes the taking of private property without just compensation and assert that compensation can only be fixed in a Superior Court action under the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 et seq. They further contend that the right of access of the residents under N.J.S.A. 48:5A-49 should be balanced against other considerations relating to the convenience, safety and well-being of other residents and, to the extent the BPU failed to undertake the balancing, its decision should be set aside. They further assert that N.J.A.C. 14:18-3.10 is invalid.
*159 Before passing on the issues raised we note a significant procedural irregularity in this case. The action of the Superior Court judge in certifying the order of July 3, 1984 as final and capable of appellate review was nothing more than an attempt to grant leave to appeal and to subject our calendar to control of the trial court. See Delbridge v. Jann Holding Company, 164 N.J. Super. 506, 510 (App.Div. 1978). In the circumstances, we would be justified in dismissing the appeal from the order of July 3, 1984. However, in view of the facts that the administrative adjudicative and rulemaking proceedings have been appealed and the case is of considerable public significance we grant appellants leave to appeal nunc pro tunc from the order of July 3, 1984.
We see no reason to declare N.J.S.A. 48:5A-49 unconstitutional. That section is a portion of the Cable Television Act, N.J.S.A. 48:5A-1 et seq., and provides as follows:
No owner of any dwelling or his agent shall forbid or prevent any tenant of such dwelling from receiving cable television service, nor demand or accept payment in any form as a condition of permitting the installation of such service in the dwelling or portion thereof occupied by such tenant as his place of residence, nor shall discriminate in rental charges or otherwise against any such tenant receiving cable television service; provided, however, that such owner or his agent may require that the installation of cable television facilities conforms to all reasonable conditions necessary to protect the safety, functioning, appearance and value of the premises and the convenience, safety and well-being of other tenants; and further provided, that a cable television company installing any such facilities for the benefit of a tenant in any dwelling shall agree to indemnify the owner thereof for any damage caused by the installation, operation or removal of such facilities and for any liability which may arise out of such installation, operation or removal.
It is, of course, clear that N.J.S.A. 48:5A-49 does not expressly require payment for the taking and thus does not unequivocally satisfy Loretto v. Teleprompter Manhattan CATV Corp., supra. However, in Princeton Cablevision Inc. v. Union Valley Corp., Judge Cohen read N.J.S.A. 48:5A-49 insofar as it required a cable television company installing its facilities to indemnify the owner of the property for any damage caused by the installation, operation or removal of its facilities as including an obligation to pay for the taking. 195 N.J. Super. at 270.
*160 We agree with Judge Cohen's perfectly reasonable result. Certainly a court should, if possible, construe a statute to avoid declaring it unconstitutional. See Town Tobacconist v. Kimmelman, 94 N.J. 85, 104 (1983). Further, as was held in Lomarch Corp. v. Mayor of Engelwood, 51 N.J. 108 (1968), the court may find an obligation to make payment to be implied in a statute even though it is not expressly set forth. As the Lomarch court noted:
Whenever the legislature authorizes municipal action which, if taken, would require, under the Constitution, that just compensation be paid, it follows that if the municipality wishes to exercise that power it must comply with the constitutional mandate and pay. The statute is not constitutionally defective for failure to expressly provide for compensation. [Id. at 113]
We are particularly loathe to declare N.J.S.A. 48:5A-49 unconstitutional because as the Legislature has declared in N.J.S.A. 48:5A-2 it serves an important public purpose. See In re Promulgation of Rules of Practice, 132 N.J. Super. 45, 48 (App.Div. 1974), certif. den. 67 N.J. 95 (1975); see also Clear TV Cable Corp. v. Public Util. Commr's, 85 N.J. 30 (1981). Consequently we hold that N.J.S.A. 48:5A-49 does not authorize the taking of private property without just compensation. Rather it authorizes private property to be taken for a public purpose with just compensation being made. Thus it is valid.
Appellants contend that even if N.J.S.A. 48:5A-49 is constitutional, the BPU had no jurisdiction to fix compensation as nothing in the Cable Television Act suggests that the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 et seq., should not apply to a taking under N.J.S.A. 48:5A-49. Thus, in appellants' view, compensation for the taking required a proceeding in the Superior Court, Law Division. Accordingly, appellants request that the case be remanded to that court to determine compensation in a condemnation proceeding.
NYT contends that the Eminent Domain Act of 1971 is inapplicable to an entry under N.J.S.A. 48:5A-49 as the Cable Television Act contemplates that there will be special procedures to decide issues relating to access. In support of this *161 contention, it points to the specialized nature and regulatory requirements of the cable television industry, and argues that the Cable Television Act recognizes these factors and reflects a legislative intent that the BPU determine all matters necessary to the enforcement of the act. The BPU agrees with NYT and asserts that procedures under the Eminent Domain Act of 1971 contemplate a "taking" or "acquisition" of property through the process of condemnation. These remedies are to be employed where an owner of private property is deprived entirely or partially of the use or enjoyment of his property or beneficial or feasible economic return from it. The BPU contends that N.J.S.A. 48:5A-49 is distinguishable from an ordinary condemnation as the requirement for compensation under it is merely an incident of the exercise of the police power.
In addressing this issue we recognize that the jurisdiction of the Superior Court under the Eminent Domain Act of 1971 is quite broad. See N.J.S.A. 20:3-5; Schiavone Const. Co. v. Hackensack, 98 N.J. 258, 265 (1985). Nevertheless, in some circumstances a property owner may be compensated for a taking in a procedure not within that act. Thus in Washington Market Enterprises v. Trenton, 68 N.J. 107 (1975), the court held that when a municipality without physically invading property substantially destroys the beneficial use the landowner has made of the property, the property has been taken in a constitutional sense. In that circumstance, the compensation should be fixed in a damage action rather than under the Eminent Domain Act. Id. at 123. See also Usdin v. Environmental Protection Dep't of N.J., 173 N.J. Super. 311, 331-332 (Law Div. 1980), aff'd 179 N.J. Super. 113 (App.Div. 1981). Accordingly we are not constrained to find an exclusivity in the Eminent Domain Act of 1971 precluding an award of compensation by a procedure not within that statute.
Overall we are satisfied for several reasons that the Eminent Domain Act of 1971 is not applicable to proceedings to determine just compensation for access authorized by N.J.S.A. *162 48:5A-49. First, we recognize that the administrative power under the Cable Television Act is very broad. See N.J.S.A. 48:5A-9; N.J.S.A. 48:5A-10. We described this power in In Re Promulgation of Rules of Practice, supra, 132 N.J. Super. at 48:
... The broad public policy to be fostered by the statute is set forth in N.J.S.A. 48:5A-2 and the means by which this public policy is to be implemented is detailed in N.J.S.A. 48:5A-10. The authority of the Director and the Board under the Act expressly includes the power to `supervise and regulate' the `contracts' entered into by every CATV company. N.J.S.A. 48:5A-9(b). In order to discharge its responsibilities under the Act, the Director with the Approval of the Board is given authority to adopt rules and regulations....
In short, the Cable Television Act confers comprehensive jurisdiction upon the Director and the Board to regulate cable television, comparable in scope in most respects to the PUC's jurisdiction over public utilities.
It is now well established that such a grant of authority is to be liberally construed so as to enable an agency to discharge its statutory responsibilities.
Second, it is clear that the Cable Television Act is specific legislation addressing an innovative and technologically complex industry. On the other hand, the Eminent Domain Act of 1971 is general, establishing the procedure for the exercise of the condemnation power vested in condemning authorities by many statutes. It is well established that in the case of inconsistent legislation the specific will prevail over the general. See Zon. Bd. of Adj. v. Service Elec. Cable T.V., 198 N.J. Super. 370, 381 (App.Div. 1985).
Third, the Cable Television Act does not specify that a taking under that act should be undertaken or compensated in accordance with the procedure in the Eminent Domain Act of 1971. Inasmuch as statutes vesting the condemnation power in an authority sometimes make such reference, see, e.g., N.J.S.A. 52:18A-78.13, its absence here is an indication that the Eminent Domain Act of 1971 is not applicable to a taking under N.J.S.A. 48:5A-49. See also Loretto v. Teleprompter Manhattan CATV Corp., 58 N.Y.2d 143, 459 N.Y.S.2d 743, 446 N.E.2d 428 (Ct.App. 1983).
We are not disturbed by the fact that our result permits an administrative agency to fix compensation. As was held in *163 Jackson v. Concord Company, 54 N.J. 113, 126 (1969), there is no constitutional objection to legislative authorization to an administrative agency to award money damages as incidental relief in connection with a subject delegated to it. We regard N.J.A.C. 14:18-3.10 as being incidental to the BPU's overall powers under the Cable Television Act.
We see no merit in appellants' contentions that the Legislature in N.J.S.A. 48:5A-49 has determined that the otherwise unqualified right of a resident to receive cable television service is to be balanced against "the convenience, safety and well-being of other residents" and the BPU erred in failing to balance those respective interests. The substantive right of the tenant in N.J.S.A. 48:5A-49 to receive cable television service is not qualified. Rather, the qualification relates to the method of the installation of service as the property owner or his agent may require that the cable operator in installing cable facilities take into consideration "the convenience, safety and well-being of other tenants." Further, the Legislature's findings of the desirability of making cable service available to tenants includes no limitation on the basic right of a potential subscriber to receive the service. N.J.S.A. 48:5A-2.
Appellants' final contention is that N.J.A.C. 14:18-3.10 is invalid because in regulating the use of the eminent domain power it violates existing law for four reasons: (1) it presumes that an award of $1.00 satisfies just compensation requirements (N.J.A.C. 18:18-3.10(a)); (2) it requires that when a challenge is made to the presumptive award of $1.00, damages must be proven based upon a "before and after" theory of valuation (N.J.A.C. 14:18-3.10(d)); (3) it fails to require an adequate description of the taking involved, thus creating a risk that the exact nature of the taking will not be established (N.J.A.C. 14:18-3.10(b)(5)); and (4) it violates due process by not ensuring that all individuals possibly affected by application of the rule receive notice in each instance of a taking (N.J.A.C. 14:18-3.10(b)).
*164 In considering this four-part contention, we take into account certain well known but germane rules regarding administrative agencies. These agencies have broad discretion in the exercise of their rule-making authority and a strong presumption of validity and reasonableness is accorded rules adopted by them. Newark v. Natural Resource Coun. Dept. Env. Prot., 82 N.J. 530, 539-540 (1980), cert. den. 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980); Matter of N.J.A.C. 11:1-20, 208 N.J. Super. 182, 197 (App.Div. 1986). Absent a clear showing that rules are ultra vires, arbitrary, capricious, unreasonable or beyond the particular agency's jurisdiction, they will not be found invalid. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-563 (1978). A party challenging a rulemaking proceeding by an agency bears the burden of demonstrating that legislative facts are insufficient to justify the rules and regulations promulgated. In re Promulgation of Rules and Practice, supra, 132 N.J. Super. at 49.
Here there is substantial evidence in the record to support a finding that the damage from the taking is nominal. Certainly the evidence of William Ard was completely supportive of the rule. Further the rule allows a property owner to apply for a greater award where the facts warrant it. N.J.A.C. 14:18-3.10(d). In the circumstances the rule is not invalid by reason of its presumption that $1.00 satisfies just compensation requirements.[3]
*165 Appellants' contention that the rule may deprive property owners of just compensation by restricting its determination to an amount determined by the "before and after" valuation method is predicated on the argument that by considering the market value of the right of access a higher award could be made. But there is no constitutional requirement that any particular standard be used for a determination of just compensation. Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 383-384 (1971); County of Middlesex v. Clearwater Village, Inc., 163 N.J. Super. 166, 173 (App.Div. 1978), certif. den. 79 N.J. 483 (1979). The "before and after" method is particularly appropriate for determining just compensation in partial taking cases. See State v. William G. Rohrer, Inc., 80 N.J. 462, 464 (1979); Village of South Orange v. Alden Corp., 71 N.J. 362, 367 (1976); Housing Authority of City of Newark v. Norfolk Realty Co., 71 N.J. 314, 321 (1976). Further, the "market value" approach advocated by appellants is a method which factors in severance damages, a consideration appropriate where a portion of the property concerned is taken in fee. Where, as in the installation of cable service, no property is taken in fee so that the taking is based on physical occupation, the "before and after" method of valuation is appropriate. See Tennessee Gas Transmission Co. v. Maze, 45 N.J. Super. 496 (App.Div. 1957).
We also point out that even if the right of access itself was valued it would be measured in terms of the owner's loss rather than the cable operator's gain. Id. at 502. Inasmuch as it is clear that the owner would rarely, if ever, suffer a loss to his property from the installation of cable we see no reason to value the right of access.[4] Accordingly the rule is not invalid *166 for requiring that compensation be based on a "before and after" theory of valuation.
We reject appellants' assertion that N.J.A.C. 14:18-3.10 violates due process protections by failing to require adequate description of the taking. Installation of cable does not contemplate a taking similar to that involved in the construction of a road or other public facilities. Thus by its nature a description of the taking will require a certain imprecision. But the rule reasonably addresses this problem in N.J.A.C. 14:18-3.10(b)(5), for when an operator desires to install cable he must supply the property owner with a general description of the proposed cable installation. If the owner does not respond to the operator's notice of his intention to install the cable, the operator must apply to the BPU for access and include a specific description of the proposed method of installation in its application. Overall we are satisfied that these provisions will require an operator to give notice adequate to describe the taking. Certainly if there is a contested case on compensation the property owner may seek further clarification of the method of installation.
We see no merit to appellants' argument that the rule does not require adequate notice to persons affected by proceedings under it. While it is theoretically true, as appellants assert, that residents, owners of easements and holders of liens may have interests affected by the installation but are not required to be given notice of access proceedings under the rule, written notice must be given to the fee holder. The requirement of this notice is surely of the most significance as the owner is the person most interested in protecting the property from diminution in value. See Ryan v. Housing Authority of Newark, 125 N.J.L. 336, 341 (Sup.Ct. 1940). In any event we consider it unlikely that any person with an interest in the property less than a fee would ever be able to *167 show entitlement to compensation by reason of damage he suffered from installation of cable service. While in some cases in which a substantial award is made to an owner a lien holder might, because of his agreement with the owner, be entitled to share in it, the possibility of such an award seems so remote that we could hardly invalidate the rule for not taking that into account. In any event, even in that case it would be in the interest of the owner to maximize his recovery to reduce his debt. Finally, we point out that while N.J.S.A. 48:5A-9 requires the cable operator only to agree to indemnify the owner for damage caused by the installation, operation or removal of its facilities, we have no doubt that a cable operator damaging property of easement holders or tenants would be liable to them as well.[5]
The Superior Court order of July 3, 1984 and the BPU order of May 3, 1985 are affirmed. N.J.A.C. 14:18-3.10 is declared to be valid.
NOTES
[1] The Association was not originally a defendant but was named in an amended complaint.
[2] Insofar as we can ascertain from the record appellants have not further pursued their claim for just compensation.
[3] The requirement that the $1.00 be tendered when an access agreement is reached between the cable operator and the property owner satisfies the mandate of N.J. Const. (1947), Art. I, ¶ 20, that just compensation be made before a taking by a private corporation. We regard the cable operator's compliance with N.J.A.C. 14:18-3.10(b)(6) as analogous to an entry by a private corporation after paying an award fixed by condemnation commissioners, a procedure authorized by N.J.S.A. 20:3-33. In both a traditional condemnation and an entry under N.J.S.A. 48:5A-49, as implemented by N.J.A.C. 14:18-3.10, the initial payment is fixed under public authority rather than ex parte by the condemnor or cable company even though in both situations there may be further proceedings for additional compensation. See N.J.S.A. 20:3-13; N.J.A.C. 14:18-3.10(d). See also Petition of American Telephone and Telegraph, 128 N.J. Super. 238, 243 (App.Div. 1974).
[4] We recognize that the owner may have a loss in the sense of having competition to his own SMATV system. But there is no constitutional requirement to compensate an owner for that loss. See State v. Gallant, 42 N.J. 583, 587 (1964).
[5] We need not determine here whether a proceeding to recover compensation for actual damage suffered by a person other than an owner would be administrative or judicial. Clearly the cable operator causing the damage would be liable under the Cable Television Act or at common law.