592 A.2d 9

# IN THE MATTER OF THE ADOPTION OF AMENDMENTS TO N.J.A.C. 6:11–8.4 AND N.J.A.C. 6:11–8.5.

Superior Court of New Jersey
Appellate Division

Argued May 20, 1991—Decided June 18, 1991.

Before Judges COLEMAN, J.H., DREIER and ASHBEY.

*Cynthia L. Samuels,* Assistant Deputy Public Advocate, argued the cause for appellant (*Wilfredo Caraballo,* Public Advocate, attorney; *Susan R. Oxford,* Assistant Deputy Public Advocate and *Cynthia L. Samuels,* on the brief).

*David Earle Powers,* Deputy Attorney General argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel; *David Earle Powers,* on the brief).

The opinion of the court was delivered by

COLEMAN, J.H., P.J.A.D.

This appeal challenges the New Jersey Department of Education's regulations allocating responsibility for testing of bilingual teaching candidates's foreign language proficiency under the Bilingual Education Act (BEA). *N.J.S.A.* 18A:35–15 *et seq.* The challenged regulatory amendments shift the proficiency evaluation from the State to the local school district. We now hold that the regulatory change is valid.

## I

In 1975, Governor Brendan Byrne signed BEA into law. According to the Governor's signing message, "[t]he new program [was] designed to ensure equal educational opportunity for all children regardless of their native environment or their fluency in the English language." The State Commissioner of Education and the Chancellor of Higher Education were directed to establish rules and regulations implementing the program. *N.J.S.A.* 18A:35–23.

Pursuant to this legislative mandate, the Department of Education (DOE) [1] initially assumed responsibility of evaluating incoming bilingual teaching candidates for language proficiency. 7 *N.J.R.* 498(d). The DOE regulations required the candidate to demonstrate a verbal proficiency in English and "one other language used also as a medium of instruction." 7 *N.J.R.* 402–03. A bilingual teacher candidate's language proficiency was evaluated during a Language Proficiency Interview, which was taped and later evaluated by trained "raters" as to the ability of the candidate to communicate in the foreign language. Upon what was deemed a satisfactory result and where other requirements were met, the DOE would issue a bilingual teacher endorsement, or certification, signifying the candidate's language proficiency.

In early 1986 the State Board voted to review the bilingual test certification requirements. By that time the language proficiency evaluations were conducted by several parties and ultimately by Kean College, which in 1988 notified the DOE that it no longer would conduct such evaluations. A DOE Study Team issued final recommendations for certification standards in June 1988.

---

[1] Under *N.J.S.A.* 18A:35–23, the Legislature granted rulemaking authority under the Bilingual Education Act to the Commissioner of Education, with approval of the New Jersey State Board of Education. Collectively they will be referred to as the Department of Education (DOE).

After DOE considered the Study Team's report and the problems encountered with the language proficiency evaluation program up to that point, the DOE determined that its evaluation of the teaching candidates language proficiency was unworkable, and in fact, hindered the implementation of the BEA. Consequently, on September 5, 1989, the DOE proposed amending the existing regulations. The proposed regulations were silent as to whether bilingual teaching candidates would have to demonstrate their language proficiency as a prerequisite to teaching in bilingual programs. 21 *N.J.R.* 2721(a). Hearings on the proposed changes were conducted by the DOE on September 19 and 20, 1989, during which interested parties were afforded an opportunity to express their views on the adoption of the proposed amendments. The proposed amendments were adopted November 28, 1989, effective September 1, 1991. 21 *N.J.R.* 3937(a). *See N.J.A.C.* 6:11–8.4(f), and, *N.J. A.C.* 6:11–8.5(f). This appeal followed the adoption of the amendments.

## II

The standard governing appellate review of the DOE's actions requires us to answer three questions:

(1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policy; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors. [*Public Serv. Elec. & Gas Co. v. New Jersey Dept. of Envtl. Protection,* 101 *N.J.* 95, 103, 501 *A.*2d 125 (1985)].

Agency regulations are presumptively valid and the burden rests with an appellant to establish their invalidity. *Medical Society of New Jersey v. New Jersey Dept. of Law & Public Safety, Div. of Consumer Affairs,* 120 *N.J.* 18, 25, 575 *A.*2d 1348 (1990); *Bergen Pines County Hosp. v. New Jersey Dept. of Human Services,* 96 *N.J.* 456, 477, 476 *A.*2d 784 (1984); *In re N.J. Medical Malpractice Reinsurance Recovery Fund Sur-*

*charge, Adopted New Rules, N.J.A.C. 11:18,* 246 *N.J.Super.* 109, 122, 586 *A.*2d 1317 (App.Div.), *certif. den.* — *N.J.* — (1991). But the presumption of validity attaches only if the regulations are within the authority delegated to the promulgating agency and are not, on their face, beyond the agency's power. *Ibid.*

Here, the Legislature has expressly vested rulemaking authority in this area to the DOE. *N.J.S.A.* 18A:35–23. Therefore, the presumption of validity applies and the Public Advocate has the burden of "demonstrating that the legislative facts are insufficient to justify the rules and regulations promulgated" or showing that the regulations are otherwise invalid. *New Jersey Pharmaceutical Association v. Klein,* 140 *N.J.Super.* 16, 23, 354 *A.*2d 707 (App.Div.1976). *See also N.Y.T. Cable TV v. Homestead at Mansfield, Inc.,* 214 *N.J.Super.* 148, 164, 518 *A.*2d 748 (App.Div.1986), *aff'd* 111 *N.J.* 21, 543 *A.*2d 10 (1988).

The Public Advocate contends the regulations are invalid for three reasons: First, the DOE's silence concerning foreign language proficiency in the regulations is irreconcilable with the statutory goals and objectives of the BEA. Second, even if the regulations can be construed as vesting responsibility for foreign language proficiency assessments in the local school districts in their hiring decisions, the DOE is not authorized under the BEA to delegate this critical duty to local districts. Third, the DOE's conclusion that local school districts, without guidelines and adequate resources, can satisfy the mandates of the BEA in this regard is wholly unsupported by the record.

In addressing the Public Advocate's first argument, we begin with the statutory language of BEA, because it expresses the clearest indication of legislative intent. *Perez v. Pantasote,* 95 *N.J.* 105, 114, 469 *A.*2d 22 (1984). Under the BEA, a local school district is required to establish a bilingual program in that district if it has 20 or more students who have limited English-speaking ability. *N.J.S.A.* 18A:35–15. The obligation

to identify such students resides with the local school districts. *N.J.S.A.* 18A:35–17. The local school district is required to notify the parents of such children that their child has been enrolled in a bilingual program, and the local school board must provide the parents maximum practical involvement. Under the amendments, the DOE will retain a supervisory role in the evaluation process.

Undoubtedly, transfer of the principal responsibility for language proficiency evaluations from the state level to the local school districts is likely to have a profound impact on the local districts. Yet, even if we were to doubt the wisdom of the policy, it is not up to an appellate court to substitute its judgement for that of the DOE, *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 561–63, 384 *A.*2d 795 (1978), where the challenged exercise of rulemaking authority requires the application of an agency's technical expertise. *Gloucester County Welfare Bd. v. New Jersey Civil Service Comm'n.,* 93 *N.J.* 384, 395, 461 *A.*2d 575 (1983). Unlike the regulation which was set aside in *Matter of Repeal of N.J.A.C. 6:28,* 204 *N.J.Super.* 158, 497 *A.*2d 1272 (App.Div.1985), the new regulations involved here do not narrow the scope of the BEA. Rather, they merely reallocate the burden of an ancillary service, namely, the initial language proficiency evaluations of bilingual teaching candidates. This involves a debatable policy issue, and the Legislature delegated such policy decisions to the DOE which has the required expertise to decide policy matters. That reallocation of the language proficiency evaluations from the State level to local school districts, violates neither the intent nor the mandate of the BEA.

The Public Advocate's reliance on *Mercer Council #4, New Jersey Civil Service Ass'n v. Alloway,* 119 *N.J.Super.* 94, 290 *A.*2d 300 (App.Div.), *aff'd* 61 *N.J.* 516, 296 *A.*2d 305 (1972) is misplaced. There, the Civil Service Commission delegated the nomination for promotion, testing, and classification of lower level civil service employees to the operational departments.

*Id.* 119 *N.J.Super.* at 96, 98–99, 290 *A.*2d 300. We found the Commission had exceeded its rulemaking authority because those powers and duties were vested in the Commission, the Chief Examiner, and the Secretary of the Commission who could not transfer those powers to the operational departments, absent an indication of legislative intent to do so. *Id.* at 99–100, 290 *A.*2d 300. Here, the DOE was not specifically vested by the BEA with the duty of testing a bilingual teaching candidate's language proficiency. Instead, the BEA vests the DOE, the local school districts and the local school boards with the joint responsibility of implementing the necessary bilingual programs. *N.J.S.A.* 18A:35–15 to *N.J.S.A.* 18A:35–23.

We also reject appellant's contention that the record does not support the DOE's conclusion that the local districts have the capabilities to implement the mandates of the BEA. The record establishes a sufficient factual basis for the DOE's conclusions and actions. *N.Y.T. Cable TV v. Homestead at Mansfield, Inc., supra,* 214 *N.J.Super.* at 164, 518 *A.*2d 748; *In re Cable Television,* 132 *N.J.Super.* 45, 48–49, 332 *A.*2d 209 (App.Div. 1974), *certif. den.* 67 *N.J.* 95, 335 *A.*2d 47 (1975). The record persuasively demonstrates a significant shortage of bilingual teachers, caused in part by the language proficiency evaluation backlog. Further, the need for bilingual teachers has steadily increased at a time when there has been a diversification of needs for bilingual language programs. The DOE encountered significant difficulty in evaluating language proficiency of incoming bilingual teaching candidates on a statewide level, caused in part by the influx of some of the exotic languages such as Arabic, Urdu Hindi and Guajarati. In response to this growing problem, the DOE has made the policy decision that the local school districts can expeditiously and effectively determine the qualifications of a candidate. While it may be helpful for the DOE to supply local school districts with uniform testing criteria, that is not mandated by the BEA. The absence of such criteria within the regulatory amendments does not render the DOE actions invalid.

## III

The Public Advocate further argues that the amendments are procedurally defective because the DOE failed to disclose its actual reasons for its actions either before or after the adoption of the amendments.

The New Jersey Administrative Procedure Act (APA), *N.J. S.A.* 52:14B–1 *et seq.*, provides that prior to adopting or amending any rule, an administrative agency must give at least 30 days notice of its intended action. It requires that:

> The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and the time when, the place where, and the manner in which interested persons may present their views thereon. [*N.J.S.A.* 52:14B–4(a)(1) ].

It also directs that the agency

> [p]repare for public distribution at the time the notice appears in the Register a statement setting forth a summary of the proposed rule, a clear and concise explanation of the purpose and effect of the rule, the specific legal authority under which its adoption is authorized, a description of the expected socio-economic impact of the rule, and a regulatory flexibility analysis, or the statement of finding that a regulatory flexibility analysis is not required, as provided in section 4 of P.L.1986, c. 169 (C.52:14B–19). [*N.J.S.A.* 52:14B–4(a)(2) ].

*See also N.J.A.C.* 1:30–3.1.

On September 5, 1989, the DOE published all of the required information. 21 *N.J.R.* 2721(a). Even though not obligated by the APA, *Heir v. Degnan*, 82 *N.J.* 109, 119, 411 *A.*2d 194 (1980), the DOE held two hearings respecting the proposed amendments. The DOE published on December 18, 1989, responses to objections to the proposed amendments. *N.J.S.A.* 52:14B–4(a)(4); 21 *N.J.R.* 3937(a). Based on the record before us, we are satisfied that the DOE met its obligations under the APA. *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n*, 85 *N.J.* 325, 334, 426 *A.*2d 1000, *app. dism.*, 454 *U.S.* 804, 102 *S.Ct.* 77, 70 *L.Ed.*2d 74 (1981).

The Public Advocate's reliance on *Motor Vehl. Mfrs. Ass'n. of U.S. v. State Farm Mut. Auto. Ins.*, 463 *U.S.* 29, 103 *S.Ct.* 2856, 77 *L.Ed.*2d 443 (1983) is also misplaced. In *State Farm,* the Supreme Court reversed a federal agency for failing to

provide a cogent explanation for abandoning a longstanding agency policy required by the federal Administrative Procedure Act, 5 *U.S.C.A.* § 706. 463 *U.S.* at 48–49, 103 *S.Ct.* at 2869, 77 *L.Ed.*2d at 461. The Court enforced the obligation placed by the Act upon federal administrative agencies to place in the record the reasons for their actions. Here, the DOE fully explained the reasons for the changes which were only moderate in nature. A rational explanation was given by the DOE for the change. *See Saint Joseph Hospital and Med. Ctr. v. Finley,* 153 *N.J.Super.* 214, 225, 379 *A.*2d 467 (App.Div.1977), *certif. den.* 75 *N.J.* 595, 384 *A.*2d 825 (1978).

We have considered the remaining contentions raised and find they are clearly without merit. *R.* 2:11–3(e)(1)(E). We affirm the adoption of *N.J.A.C.* 6:11–8.4 and *N.J.A.C.* 6:11–8.5 as the presumptions of validity and reasonableness have not been rebutted. In all respects, the regulations as amended satisfy the requirements of *Public Serv. Elec. & Gas Co. v. New Jersey Dept. of Envtl. Protection, supra.*

Affirmed.