## Mark W. Goldberg et al. *v.* Insurance Department of the State of Connecticut et al.
### (13153)

Peters, C. J., Healey, Callahan, Glass and Covello, Js.

Argued January 5—decision released April 12, 1988

*Carl J. Schuman,* assistant attorney general, with whom were *Jonathan L. Ensign,* assistant attorney

general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellants (defendants).

*Gerald L. Garlick,* with whom were *Marc A. Rubenstein,* certified legal intern, and, on the brief, *H. David Leventhal,* for the appellees (plaintiffs).

CALLAHAN, J. The defendants, the insurance department of the state of Connecticut (department) and Peter W. Gillies, the insurance commissioner (commissioner), having been granted certification by this court, filed the instant appeal from a decision of the Appellate Court. See *Goldberg* v. *Insurance Department,* 9 Conn. App. 622, 520 A.2d 1038 (1987). The Appellate Court, by a divided vote, upheld the judgment of the trial court, *Bieluch, J.,* that sustained the administrative appeal of the plaintiffs, Mark W. Goldberg and Options Services, Inc., from a decision of the commissioner suspending for a period of three months all insurance licenses previously issued to the plaintiffs and levying a $4100 fine against Goldberg for violations of the state insurance laws. The trial court and the Appellate Court found that the insurance department was without authority to take any administrative action on its charges against the plaintiffs because the department had failed to comply with the mandates of General Statutes § 4-167 (a) (2).[1] Section 4-167 (a) (2) requires the department to "adopt as a regulation rules of practice setting forth the nature and requirements of all formal and informal procedures available provided such rules shall be in conformance with the provisions of this chapter."

---

[1] General Statutes § 4-167 (a) (2) provides: "ORGANIZATION DESCRIPTION TO BE ADOPTED. RULES OF PRACTICE. PUBLIC INSPECTION. (a) In addition to other regulation-making requirements imposed by law, each agency shall . . . (2) adopt as a regulation rules of practice setting forth the nature and requirements of all formal and informal procedures available provided such rules shall be in conformance with the provisions of this chapter."

The underlying facts are not in dispute. In response to a formal complaint, the department began an investigation of a medical benefits insurance plan that was allegedly being operated by the plaintiffs in contravention of the insurance laws. Subsequently, it brought an injunction action to enjoin the plaintiffs from operating the plan. This action was later withdrawn because the Provident Mutual Life Insurance Company had agreed to take over the plan and pay all outstanding claims. In July, 1982, however, the department served notices upon the plaintiffs regarding its intent to hold hearings to determine whether administrative sanctions should be levied. The plaintiffs moved to enjoin the department from conducting the hearings on the ground that, inter alia, § 38-4-8[2] of the Regulations of Connecticut State Agencies, which was adopted by the department, was legally insufficient and not in compliance with § 4-167 (a) (2). The trial court, *Spada, J.,* denied the injunctive relief sought.

Pursuant to a second amended notice, the administrative hearings were held before a hearing officer over the course of three days: October 19, 1982, October 21, 1982, and November 12, 1982.[3] The hearing officer's "Memorandum of Findings and Recommendations"

---

[2] The *Regulations of Connecticut State Agencies* § 38-4-8 then provided: "All hearings conducted in the insurance department are conducted in accordance with the requirements of and procedures suggested in Public Act 854 of the 1971 Session of the General Assembly, Sections 12 through 17 inclusive [the UAPA], as the same may be amended from time to time. Conferences, interviews, and formal hearings conducted or held as a part of the administrative processes of the insurance department are conducted on an informal basis, in accordance with standards designed to meet the purposes to be accomplished by the proceeding."

[3] The hearing was initially scheduled to begin on July 22, 1982, and was thereafter rescheduled to August 12, 1982. The hearing was again postponed pending a decision in the injunction action filed by the plaintiffs and was rescheduled to October 19, 1982. Each time the hearing was to be held the defendants gave proper notice of the hearing prior to its scheduled commencement.

contained extensive findings of fact and conclusions of law, and recommended the revocation of all insurance licenses issued to the plaintiffs and the imposition of $3100 in fines against Goldberg. Thereafter, the commissioner adopted the factual findings and conclusions of law of the hearing officer but entered a final order suspending the plaintiffs' insurance licenses for only three months and imposing a fine of $4100 on Goldberg.

The plaintiffs took a timely appeal to the Superior Court from the final order of the commissioner. In their appeal they argued that the defendants acted illegally, arbitrarily, in abuse of their discretion, and in violation of the Uniform Administrative Procedure Act (UAPA) and the United States and Connecticut constitutions in that: "(a) the Insurance Department failed to adopt as a regulation written rules of procedure governing its hearing; (b) the Insurance Department failed to adopt substantive regulations with regard to the standards for the suspension of Plaintiffs' licenses and the imposition of fines; (c) there was insufficient evidence on which [the commissioner] could suspend Goldberg's licenses or impose a fine on Goldberg; [and] (d) there was insufficient evidence on which [the commissioner] could suspend [Option] Services' license." The trial court sustained the plaintiffs' appeal on the first ground only and held that the department had failed to adopt sufficient procedural regulations as required by § 4-167 (a) (2), thus rendering the department's actions void.

Thereafter, the defendants appealed to the Appellate Court which upheld the judgment of the trial court. *Goldberg* v. *Insurance Department,* supra, 628. The defendants then petitioned this court for certification which was granted limited to the following issues: "(1) Whether the Insurance Department's adoption by reference of the sections of the Uniform Administrative Procedure Act (UAPA) governing the conduct of hear-

ings satisfies the UAPA requirement that an agency adopt 'rules of practice setting forth the nature and requirements of all formal and informal procedures available?' (2) Whether an administrative proceeding held in accordance with the UAPA can be invalidated because an agency did not sufficiently comply with a statutory requirement to adopt regulatory rules of practice without a showing of prejudice?"

In 1971, the legislature passed the UAPA, which became effective on January 1, 1972. See Public Acts 1971, No. 854. The act was subsequently codified in General Statutes §§ 4-166 through 4-189. " '[T]he UAPA was intended to be a uniform guide to all agency action, as the term "agency" is defined in § 4-166 (1). . . . [T]he act was designed for two purposes. First, it provides for uniform standards by which all non-exempted agency action is to be judged; second, it provides a vehicle for judicial review as an alternative for preexisting statutes or in situations in which no appellate review was previously provided.' *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 440–41, 363 A.2d 103 (1975)." *Hartford* v. *Powers,* 183 Conn. 76, 80, 438 A.2d 824 (1981); see also *Salmon Brook Convalescent Home* v. *Commissioner on Hospital & Health Care,* 177 Conn. 356, 417 A.2d 358 (1979).

In attempted compliance with § 4-167 (a) (2) the department published a series of eight regulations that went into effect on October 11, 1972. See Regs., Conn. State Agencies §§ 38-4-1 through 38-4-8. The only one challenged by the plaintiffs is § 38-4-8 which then provided: "All hearings conducted in the insurance department are conducted in accordance with the requirements of and procedures suggested in Public Act 854 of the 1971 Session of General Assembly, Sections 12 through 17 inclusive, as the same may be amended from time to time. Conferences, interviews, and formal hearings conducted or held as a part of the administrative pro-

cess of the insurance department are conducted on an informal basis, in accordance with standards designed to meet the purposes to be accomplished by the proceeding." 

The plaintiffs' primary challenge is addressed to the sufficiency of the content of § 38-4-8, and not to the process by which the regulation was promulgated.[4] Essentially the plaintiffs have claimed that the department has failed to comply with the mandate of § 4-167 (a) (2) because it failed to adopt at least one procedural regulation governing its proceedings that was different from those set forth in the UAPA. They argue that the mere incorporation by reference of the rules of procedure of the UAPA does not comply with the mandate of the statute. The plaintiffs further argue that the actions taken by the defendants were void because they had no authority whatsoever to conduct the disciplinary hearings or to impose sanctions without first having complied with § 4-167 (a) (2). We disagree and find the second issue certified for review dispositive of the appeal.

In order for a reviewing court to reverse or modify an agency's decision, General Statutes § 4-183 (g) (1)[5]

---

[4] At oral argument before this court the plaintiffs acknowledged that they are challenging only the "content of the regulation" and not the process by which it was adopted. The plaintiffs proceeded under the assumption that the 1972 insurance department regulations were properly adopted with the approval of the legislative regulation review committee.

[5] General Statutes § 4-183 (g) provides: "APPEAL TO SUPERIOR COURT. . . .

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

requires the court to find that substantial rights of the appellant have been prejudiced. Here the plaintiffs assert that they were prejudiced by the department's alleged violation of § 4-167 (a) (2). A review of the record before this court, however, reveals a total absence of any prejudice to the plaintiffs that resulted from the department's failure to adopt regulations in addition to § 38-4-8.

Notwithstanding the plaintiffs' arguments to the contrary,[6] ordinarily the validity of an administrative regulation can be challenged only by one directly harmed by its application. Such a challenge requires a showing of some type of personal harm or injury or proof that an individual's rights have been prejudiced or violated by the regulation. See *State Department of Health & Rehabilitative Services* v. *Alice P.,* 367 So. 2d 1045, 1052 (Fla. App. 1979); *People* v. *Vasquez,* 76 Misc. 2d 5, 10, 348 N.Y.S.2d 1007 (1973); 73 C.J.S. 607, Public Administrative Law and Procedure § 93 (b). Thus, where, as here, a party challenges the failure of an administrative agency either to adopt or publish sufficient procedural rules, that party bears not only the burden of overcoming the presumption of validity that attaches to the agency regulations that exist; *Marine Fisheries Commission* v. *Organized Fishermen of Florida,* 503 So. 2d 935, 938 (Fla. App.), review denied, 511 So. 2d 999 (Fla. 1987); *NYT Cable TV* v. *Homestead at Mansfield, Inc.,* 214 N.J. Super. 148, 164, 518 A.2d 748 (1986), cert. granted, 107 N.J. 154, 526 A.2d 213 (1987); *Federated American Ins. Co.* v. *Marquardt,* 108 Wash. 2d 651, 654, 741 P.2d 18 (1987); but must also demonstrate some prejudice as a result of the

---

[6] The plaintiffs argue that they did not have to demonstrate prejudice because the defendants' actions were void ab initio for failing to comply with the mandates of the UAPA. The plaintiffs also alternatively argue that the administrative agency should bear the burden of demonstrating the absence of prejudice to the plaintiffs.

agency's alleged failure. *United States* v. *Fitch Oil Co.*, 676 F.2d 673, 678 (Temp. Emer. Ct. App. 1982); *Pasco, Inc.* v. *Federal Energy Administration*, 525 F.2d 1391, 1405 (Temp. Emer. Ct. App. 1975); *Jergeson* v. *Board of Trustees of School District No. 7*, 476 P.2d 481, 482, 484 (Wyo. 1970); see also 2 B. Mezines, J. Stein & J. Gruff, Administrative Law § 8.02 [3], p. 8-27.

Prior to the start of the hearings in October, 1982, the department sent a "Second Amended Notice of Hearing,"[7] which specifically notified the plaintiffs that the public hearings would be conducted "[i]n accordance with the provisions of Sections 4-177a and 4-182 of the Connecticut General Statutes" and, generally, "in accordance with the provisions of the Uniform Administrative Procedure Act (Chapter 54, C.G.S.)." The notice detailed the statutory basis upon which the defendants' legal authority and jurisdiction to conduct the hearing rested, and the specific statutory violations that were involved. In addition, the notice set forth, with a high degree of specificity, the relevant facts and conduct of the plaintiffs that formed the basis of the charges against them that the defendants intended to pursue during the hearings. The notice concluded by inviting all interested persons to attend the public hearing and to participate therein in accordance with the applicable provisions of the UAPA. In light of the foregoing, we conclude that the plaintiffs cannot, in good faith, raise the argument that they did not have advance notice of the applicable procedural rules under which the hearings were to be conducted.

In addition, the plaintiffs have pointed to no specific rule of procedure that the defendants applied or followed during the course of the hearings that was unpub-

---

[7] The initial and first amended notices also specifically notified the plaintiffs that the hearings would be conducted in accordance with General Statutes §§ 4-177a and 4-182.

lished or of which they had no notice. Nor have the plaintiffs argued that they were deprived of a full and fair opportunity to be heard. The hearing was conducted over a three day period at which time the plaintiffs were given full opportunity to cross-examine the defendants' witnesses, to present witnesses of their own and to submit relevant documentary evidence.

The plaintiffs argue, however, that they demonstrated prejudice because they showed that the defendants "had modified the statutory requirements of the UAPA with regard to the request for a more definite statement [of its allegations] and that Defendants had their own informal procedure, notwithstanding the Connecticut General Statutes, with regard to lawfully-issued subpoenas." Specifically, the plaintiffs argue that the defendants relied on unpublished regulations to: (a) deny the plaintiffs' request for a more detailed statement of the facts supporting the defendants' allegations pursuant to General Statutes § 4-177 (b) (4); and (b) refuse to honor a subpoena issued in accordance with General Statutes § 51-85.[8] As a result, the plaintiffs claim they were hindered in the preparation of their defense. We are unpersuaded.

It must first be noted that the plaintiffs have not specified in what fashion they were hindered or

---

[8] "[General Statutes] Sec. 51-85. AUTHORITY AND POWERS OF COMMISSIONERS OF THE SUPERIOR COURT. Each attorney-at-law admitted to practice within the state, while in good standing, shall be a commissioner of the superior court and, in such capacity, may, within the state, sign writs and subpoenas, take recognizances, administer oaths and take depositions and acknowledgments of deeds. Each such attorney may also issue subpoenas to compel the attendance of witnesses and subpoenas duces tecum in administrative proceedings. If, in any administrative proceeding, any person disobeys such subpoena or, having appeared in obedience thereto, refuses to answer any proper and pertinent question or refuses to produce any books, papers or documents pursuant thereto, application may be made to the superior court or any judge thereof for an order compelling obedience."

prevented from adequately preparing their defense. General Statutes § 4-177 (b) (4) requires a more detailed statement to be furnished upon request only where the agency is unable to state the facts on which it relies in detail in the initial notice of the hearing. As previously indicated, the second amended notice provided by the defendants was very specific and fully complied with § 4-177 (b) (1) through (4).[9] It is therefore clear that the denial of the plaintiffs' request for a more specific statement did not result from the application of some unpublished procedural rule of the department; a more specific statement was simply not necessary or required. Further, the commissioner's alleged refusal to attend the hearing personally in response to a subpoena issued by the plaintiffs' attorney pursuant to § 51-85 was based by the commissioner upon a claimed statutory exemption under General Statutes § 4-13a.[10] It clearly was not based upon a policy or procedural rule of the commissioner or department that should have been adopted and published as a regulation under § 4-167 (a) (2).

The only other argument raised by the plaintiffs in connection with their claim of prejudice is that the

---

[9] General Statutes § 4-177 (a) and (b) (1) through (4) provide: "CONTESTED CASES. NOTICE. RECORD. (a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

"(b) The notice shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; (4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished."

[10] "[General Statutes] Sec. 4-13a. APPEARANCE OF ASSISTANT ON SUBPOENA OF STATE OFFICER. Whenever any elective state officer or his deputy or any state commissioner or his deputy is subpoenaed to appear before any court in any matter involving the state, he may delegate any assistant having knowledge of the facts in issue to appear for him, unless such summons is issued by a judge of the court before which such matter is pending, requiring the personal appearance of said commissioner."

department failed to adopt and publish substantive guidelines regarding the decision to suspend or revoke an insurance license. The plaintiffs refer to the testimony of Jean Shea, the assistant chief of the licenses and claims division, which indicates that the decision to suspend or to revoke an insurance license is within the discretion of the commissioner. It must first be noted that, at oral argument before this court, the plaintiffs' counsel conceded that this argument involves a substantive claim that had not been briefed or presented to this court. Under the circumstances we need not reach it. Moreover, we also find the argument to be without merit because the legislature has specifically defined the various acts or conduct prohibited and has mandated the range of permissible penalties that the commissioner may impose for various violations of the insurance laws of this state. See, e.g., General Statutes § 38-62 et seq. While the ultimate decision whether to revoke or suspend an insurance license is left to the discretion of the commissioner, such discretion must be exercised within statutory guidelines. *Lundy Electronics & Systems, Inc.* v. *Tax Commissioner,* 189 Conn. 690, 695, 458 A.2d 387 (1983); *Page* v. *Welfare Commissioner,* 170 Conn. 258, 262, 365 A.2d 1118 (1976). Should the commissioner exceed the statutory limits, impose an unwarranted penalty, or abuse his discretion, the injured party has a right to judicial review. The decision to suspend or revoke must be made on an individual, case-by-case basis, only after an investigation and a hearing, and only after the licensee has been given a full and fair opportunity to be heard.

Therefore, we hold that the plaintiffs have failed to allege or to demonstrate that the content of § 38-4-8, as adopted and applied in this case, in any way prejudiced their rights in the proceedings before the department. The plaintiffs have failed to demonstrate that the defendants applied to their prejudice any rules of

procedure that were not published as a regulation as required by § 4-167 (a) (2), nor have they even intimated a specific area of the proceedings in which a regulation should have been adopted in order to accord with the minimum requirements of due process.

There is error, the judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings necessary to decide the merits of the following issues which were raised by the plaintiffs in their appeal to the Superior Court and which have yet to be ruled upon: (1) Whether there was sufficient evidence on which Defendant could suspend Goldberg's licenses or impose a fine on Goldberg; and (2) Whether there was sufficient evidence on which Defendant could suspend Options Services, Inc.'s license.

In this opinion the other justices concurred.