[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal wherein Dennis J. Anziano (Anziano), formerly the Chief of Police of the Town of Madison, is appealing a decision by the Board of Police Commissioners of the Town of Madison (Board) dismissing him from his position as Chief of Police. Anziano was the Chief of Police in Madison from February 16, 1987 until his dismissal by the Board on July 22, 1992. CT Page 9577
The sequence of events which culminated in Anziano's dismissal began in August of 1991 when certain information relating to alleged activities by Anziano came to the attention of the Board. The Board then retained National Detective Agency (National) to investigate the matter and to submit a report to the Board. A report was submitted to the Board on October 3, 1991. Based on certain allegations contained in that report the Board directed that National conduct a further investigation, which was done by National, and resulted in a second report being submitted to the Board on December 11, 1991. Anziano was provided with copies of both reports. Based on the information provided in both reports the Board directed its counsel to prepare written formal charges which, if proven, would constitute grounds for the removal of Anziano from his position as Chief of the Madison Police Department. These changes were ordered prepared in contemplation of formal hearings pursuant to General Statutes 7-278. That statute provides, in pertinent part:
 Hearing prior to dismissal of municipal police head. Just cause requirement. Appeal. No active head of any police department of any town, city or borough shall be dismissed unless there is a showing of just cause by the authority having the power of dismissal and such person has been given notice in writing of the specific grounds for such dismissal and an opportunity to be heard in his own defense, personally or by counsel, at a public hearing before such authority. Such public hearing, unless otherwise specified by charter, shall be held not less than five or more than ten days after such notice. Any person so dismissed may appeal. . . . Said court shall review the record of such hearing, and, if it appears upon the hearing upon the appeal that testimony is necessary for an equitable disposition of the appeal, it may take evidence or appoint a referee or a committee to take such evidence as it directs and report the same to the court with his or its findings of fact, which report shall constitute a part of the proceedings upon which the determination of the court shall be made. The court, upon such appeal, and after a hearing thereon, may affirm the action of such authority, or CT Page 9578 may set the same aside if it finds that such authority acted illegally or arbitrarily, or in the abuse of its discretion, with bad faith, malice, or without just cause.
The draft of the proposed charges was submitted by counsel to the Board, adopted by the Board at a special meeting held on March 16, 1992, a copy was presented to Anziano who was present with counsel at the board meeting, and Anziano was advised that hearings would begin on March 25, 1992. The hearings began as scheduled and were conducted on twenty-two occasions until completed on July 22, 1992.
The document adopted by the Board and presented to Anziano at the meeting on March 16, 1992, and with which the subsequent hearings were concerned, consisted of eight formal charges. The entire document reads as follows:
 NOTICE OF INTENT TO DISMISS FROM OFFICE PURSUANT TO CONNECTICUT GENERAL STATUTE 7-278
 This document serves to notify you of charges, the establishment of which are sufficient to dismiss you as Chief of Police of the Madison Police Department.
 Under these circumstances, you have the following rights:
 1. The right to a public hearing before this Commission;
 2. The right to be heard in your own defense at such hearing before the Commission;
 3. The right to counsel at such hearing before the Commission.
The specific grounds at issue are as follows:
CHARGE 1
 Between approximately June, 1991 and August 15, 1991, you utilized Town funds to purchase from Guilford Tire Company, 655 Boston Post Road, Guilford, Connecticut, four (4) tires for your own use rather than CT Page 9579 for use by the Madison Police Department, while representing that said purchase was for the use of said Department.
 The establishment of said act would constitute just cause for your dismissal for one or more of the following reasons:
 1. Said act would constitute known and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the rules, policies and orders of the Madison Police Department:
 3. Said act would demonstrate inefficiency or incompetence in the performance of your duties as Chief of Police;
 4. Said act would constitute a violation of purchasing rules and policy of the Town of Madison;
 5. Said act would constitute defrauding of a public community, in violation of Connecticut General Statute 53a-123(a)(4);
 6. Said act would constitute a knowing and intentional attempt to avoid the payment of the sales tax required by the State of Connecticut.
CHARGE 2
 Between approximately June 12, 1991 and September 5, 1991, you did purchase from CAREFREE Small Buildings, 48 Westchester Road, Colchester, Connecticut, a storage shed for your own use rather than for use by the Madison Police Department, although you represented that such purchase was for the use of said Department.
 The establishment of said act would constitute just cause for your dismissal for one or more of the following reasons:
CT Page 9580
 1. Said act would constitute knowing and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the rules, policies or orders of the Madison Police Department;
 3. Said act would demonstrate inefficiency or incompetence in the performance of your duties as Chief of Police;
 4. Said act would constitute a violation of the purchasing rules and policy of the Town of Madison;
 5. Said act would constitute defrauding of a public community, in violation of Connecticut General Statute 53a-123 (a)(4;
 6. Said act constituted a knowing and intentional attempt to avoid the payment of the sales tax required by the State of Connecticut.
CHARGE 3
 Between approximately May 1990 and June 27, 1990, you sold two (2) police cars to Michael's Garage Auto Salvage, Turkey Hill, Haddam, Connecticut.
 The establishment of said act would contribute to a finding of just cause for your dismissal for one or more of the following reasons:
 1. Said act would constitute knowing and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the rules, policies or orders of the Madison Police Department;
3. Said act would demonstrate inefficiency CT Page 9581 or incompetence in the performance of your duties as Chief of Police;
 4. Said act would constitute a violation of the purchasing rules and policy of the Town of Madison.
CHARGE 4
 Between approximately November 20, 1990 and December 6, 1990, you accepted a CD player for your police car from Longworth Carlson, Inc., 55 North Main Street, Middletown, Connecticut.
 The establishment of said act would constitute a finding of just cause for your dismissal for one or more of the following reasons:
 1. Said act would constitute knowing and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the rules, policies or orders of the Madison Police Department;
 3. Said act would demonstrate inefficiency or incompetence in the performance of your duties as Chief of Police;
 4. Said act would constitute a violation of the purchasing rules and policy of the Town of Madison;
 5. Said act would violate Connecticut General Statute 29-9.
CHARGE 5
 On an undetermined date in March, 1991, you assigned a police officer, who as on duty, to go to the Madison Coins and Crafts, 891 Boston Post Road, Madison, Connecticut, to pick up coin supplies, purchased with Town of Madison funds, and deliver them to your home to be utilized for extra-Departmental purposes. CT Page 9582
 The establishment of said act would constitute just cause for your dismissal for one or more of the following reasons:
 1. Said act would constitute knowing and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the rules, policies or orders of the Madison Police Department;
 3. Said act would demonstrate inefficiency or incompetence in the performance of your duties as Chief of Police.
CHARGE 6
 Between approximately May and June, 1991, you gave a 9 millimeter Beretta handgun belonging to the Madison Police Department to William Gedney, 605 County Road, North Madison, Connecticut.
 The establishment of said act would constitute just cause for your dismissal for one or more of the following reasons:
 1. Said act would constitute knowing and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the rules, policies or orders of the Madison Police Department;
 3. Said act would demonstrate inefficiency or incompetence in the performance of your duties as Chief of Police.
CHARGE 7
 Between approximately August 3, 1990 and August 23, 1990, you did order and obtain a .380 Beretta handgun for Richard Spero, 29 Aylesbury Circle, Madison, Connecticut.
CT Page 9583
 The establishment of said act would constitute just cause for your dismissal for one or more of the following reasons:
 1. Said act would constitute knowing and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the rules, policies or orders of the Madison Police Department;
 3. Said act would demonstrate inefficiency or incompetence in the performance of your duties as Chief of Police;
 4. Said act would constitute a violation of the purchasing rules and policy of the Town of Madison.
 5. Said act would constitute a knowing and intentional attempt to assist Richard Spero to avoid the payment of the sales tax required by the State of Connecticut;
 6. Said act would violate Connecticut General Statute 29-29.
CHARGE 8
 Between approximately June 27, 1991 and October 11, 1991, you did order and purchase from Sile Distributors, Inc., 998 North Colony Road, Meriden, Connecticut, a 9 millimeter Beretta machine gun for Martin Dudley, 13 Green Acres Drive, Madison, Connecticut.
 The establishment of said act would constitute just for your dismissal for one or more of the following reasons.
 1. Said act would constitute knowing and intentional dishonesty;
 2. Said act would constitute a knowing, intentional and material violation of the CT Page 9584 rules, policies or orders of the Madison Police Department;
 3. Said act would demonstrate inefficiency or incompetence in the performance of your duties as Chief of Police;
 4. Said act would constitute a violation of the purchasing rules and policy of the Town of Madison;
 5. Said act would constitute a knowing and intentional attempt to assist Martin Dudley to avoid the payment of the sales tax required by the State of Connecticut;
 6. Said act would constitute a knowing and intentional attempt to obtain and transfer a machine gun to a civilian in violation of federal law.
As indicated above, the public hearings took place in twenty-two sessions from March 25 through July 22, 1992. The Board had retained Attorney Michael P.A. Williams to provide it with such advice as might be needed during the hearings, and the Board's labor counsel presented the evidence in connection with the various charges. Anziano was in attendance with counsel throughout the hearings. All witnesses testified under oath, the evidence and all other matters heard by the Board were recorded and transcribed in over twenty-three hundred pages, and ninety-one exhibits were presented by the Board and twenty-six by Anziano. Anziano's counsel was given the opportunity to cross examine all witnesses and presented evidence on behalf of Anziano.
The deliberations of the Board were conducted in a public session on July 22, 1992. Charge Five was dismissed since no evidence had been offered in proof of that charge and the found that Charge Three and Charge Six had not been proven. As to Charges One, Two, Four, Seven and Eight, the Board found that the factual allegations had been proven, and that just cause for dismissal on each of those charges had been proven. The Board then voted to dismiss Anziano effective on that date. The votes and findings of the Board were summarized in a memorandum of decision dated July 24, 1992. CT Page 9585
In his brief under the heading "Position of Chief Anziano" Anziano sets forth sixteen reasons why he claims that "The Board dismissing Chief Anziano acted arbitrarily and in abuse of its discretion, with bad faith and malice and without just cause." The brief then goes on to list six claims under the heading "Legal Arguments". Most of the first sixteen claims appear to be included in the Legal Arguments. The court will discuss the Legal Arguments and such other claims as it deems necessary.
The Legal Arguments are as follows:
 A. BY ACTING AS INVESTIGATOR, ACCUSER, PROSECUTOR AND JUDGE, THE MADISON BOARD OF POLICE COMMISSIONERS VIOLATED THE DUE PROCESS RIGHTS OF THEN CHIEF OF POLICE OF THE TOWN OF MADISON, DENNIS J. ANZIANO TO A FAIR HEARING BEFORE AN IMPARTIAL HEARING BODY.
 B. SECTION 7-278 IS UNCONSTITUTIONAL IN THAT IT ALLOWS THE HEARING BODY TO CONDUCT THE INVESTIGATION, DETERMINE WHICH CHARGES IT WILL BRING AGAINST THE EMPLOYEE, ALLOWS IT TO THEN PROSECUTE THE CHARGES AND THEN TO SIT IN JUDGMENT ON THE OUTCOME.
 C. THE BOARD UTILIZED AN INCORRECT BURDEN OF PROOF STANDARD IN MAKING ITS DECISION TO TERMINATE ANZIANO.
 D. IN LIGHT OF THE FACT THAT ANZIANO RAISED NO AFFIRMATIVE DEFENSES BUT SIMPLY DENIED THE ALLEGATIONS AGAINST HIM, THE PLACEMENT OF A BURDEN OF PROOF UPON HIM WAS CONSTITUTIONALLY DEFECTIVE AND DEPRIVED HIM OF A FAIR HEARING VIOLATING HIS RIGHT TO DUE PROCESS.
 E. ATTORNEY WILLIAMS INVADED THE DECISION FUNCTION OF THE HEARING TRIBUNAL AND MADE RULINGS ON MATTERS WHICH WERE FACTUAL DECISIONS FOR THE HEARING BODY AND AGAINST THE WEIGHT OF THE EVIDENCE.
 F. THE BOARD'S FAILURE TO ADOPT REGULATIONS FOR REMOVAL AS REQUIRED BY SECTION 7-276, CONN. GEN. STAT. RENDERS THE HEARING VOID AB INITIO.
Legal Argument A claims that Anziano's due process rights were violated because the Board acted as investigator, accuser, prosecutor and judge, thus depriving him of a fair hearing before an impartial hearing body. CT Page 9586
Anziano first claims that he had a property right in continued employment and therefore was entitled to constitutional due process.
 A preeminent source of a property right in employment cases is the "for cause" requirement in the removal process of the employee. "`The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except "for cause."'" Setliff v. Memorial Hospital of Sheridan County, 850 F.2d 1384, 1395 (10th Cir.) 1988, quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265
(1982); see RR Village Assn., Inc. v. Denver Sewer Corporation, 826 F.2d 1197, 1201 (2nd Cir. 1987); Perri v. Aytch, 724 F.2d 362, 366
(3d Cir. 1983). Thus, the existence of a "for cause" limitation for dismissal establishes an individual entitlement to continued employment that is significant enough to be considered a property right to which due process protection attaches.
Bartlett v. Krause, 209 Conn. 352, 367 (1988).
The hearing in this case was conducted pursuant to General Statutes 7-278 which requires a finding of just cause for removal from office. Therefore, Anziano was entitled to procedural due process in connection with the proceedings which resulted in his removal from office.
One of the leading Connecticut cases dealing with what is required in a removal proceeding is Bartlett v. Krause, supra, a case which was concerned with the due process adequacy in a proceeding under General Statutes 29-300, which deals with the removal of municipal fire marshals, and which is analogous to 7-278.
 The plaintiff, therefore, was entitled to the following procedural safeguards prior to her dismissal, some but not all of which she received. First, notification in writing of the specific grounds for the proposed CT Page 9587 dismissal. Second, the meaningful opportunity to be heard in her own defense, personally or by counsel, at a public hearing, before the defendants have the power of dismissal. This meaningful opportunity includes not only the production at the public hearing, by the defendants, of the person or persons whose complaints form the basis of the ground or grounds in the notification of grounds for potential dismissal, but also the opportunity to examine at that time any or all of these complaints should the plaintiff decide to do so. Third, a statement, oral or in writing, of the reason or reasons upon which the defendants premise termination if that is the sanction imposed.
Bartlett v. Krause, at 380, 381.
To the same effect, see Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538-539 (1985).
The procedures followed in this case were more than sufficient insofar as satisfying the due process rights to which Anziano was entitled.
As part of Legal Argument A claiming a violation of due process rights, Anziano asserts that he did not receive a fair hearing before an impartial body. Insofar as this claim relates to the fact that the Board proceeded in accord with 7-278, which is claimed to be unconstitutional, that claim will be discussed in this opinion. Insofar as that claim alleges actual bias on the part of the Board in this case, or that the Board had prejudged the case, the court is of the opinion that the record, the briefs, and the oral argument do not support this claim and it is without merit.
The second Legal Argument advanced by Anziano is that 7-278
is unconstitutional in that it allows the Board to act as investigator, accuser, prosecutor, and judge. This precise claim has been rejected by the United States Supreme Court in a case which a state medical examining board was empowered by statute to investigate, conduct a hearing and then discipline physicians.
The contention that the combination of CT Page 9588 investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implement.
 Very similar claims have been squarely rejected in prior decisions of this Court.
. . .
 It is not surprising, therefore, to find that "[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process. . . ." 2 K. Davis, Administrative Law Treatise 13.02, p. 175 (1958). Similarly, our cases, although they reflect the substance of the problem, offer no support for the bald proposition applied in this case by the District Court that agency members who participate in an investigation are disqualified from adjudicating. The incredible variety of administrative mechanisms in this country will not yield to any single, organizing principle.
Withrow v. Larkin, 421 U.S. 35, 47, 52 (1974).
It is to be noted that the cases cited by Anziano in of his claim that 7-278 is unconstitutional all involve cases where individual members of the hearing body were found to have been involved in various activities which clearly affected their impartiality. This is not the situation in this case. CT Page 9589
One who challenges the constitutionality of a statute is faced with a formidable task.
 Our examination of 7-147 is guided by the maxim that "[i]n passing upon the constitutionality of a legislative act, we will make every presumption and intendment in favor of its validity. . . ." New Milford v. SCA Services of Connecticut, Inc., 174 Conn. 146, 148, 384 A.2d 337 (1977); Aunt Hack Ridge Estates, Inc. v. Planning Commission, 160 Conn. 109, 112, 273 A.2d 880 (1970); Edwards v. Hartford, 145 Conn. 141, 145, 139 A.2d 599
(1958). . . .
 The party challenging a statute's constitutionality has a heavy burden of proof; the unconstitutionality must be proven beyond all reasonable doubt. State Management Assn. of Connecticut, Inc. v. O'Neill, 204 Conn. 746, 758, 529 A.2d 1276 (1987); State v. Hernandez, 204 Conn. 377, 385, 528 A.2d 794 (1987); University of Connecticut Chapter, AAUP v. Governor, 200 Conn. 386, 390, 512 A.2d 152
(1986); . . .
Bottone v. Westport, 209 Conn. 652, 657 (1989).
Anziano has failed to establish the unconstitutionality of7-278 either on its face, or as applied to the facts in this case.
The third Legal Argument made by Anziano is that the Board utilized an incorrect burden of proof in reaching the decision to dismiss him. It is the position of Anziano that rather than the standard of clear and convincing evidence, which the Board used, that the proper standard was beyond a reasonable doubt, which is the level of proof required in a criminal case. The attorney presenting the charges urged the Board to apply the preponderance of the evidence standard but the Board, acting upon the advice of its attorney, Mr. Williams, chose what is generally considered the more strict of the civil standards, which is clear and convincing evidence.
It should be noted that Anziano does not claim that the evidence presented failed to satisfy the clear and convincing CT Page 9590 standard, or even that it failed to satisfy the standard of beyond a reasonable doubt. His claim is that the Board applied the standard of proof to the evidence it heard.
The basis of Anziano's claim that the heavier standard of proof, beyond a reasonable doubt, should have been used by the Board, is that the charges made in this case were criminal in nature and attacked his moral character. The fallacy in this reasoning is that, no matter what the specific factual allegations are, proceedings before the Board were administrative in nature with the potential consequences to Anziano being limited to loss of his position. While some of the charges arguably could be the basis for criminal proceedings in another forum, that does not make these proceedings criminal in nature.
In his brief Anziano refers to several arbitration decisions, which were involved with construing collective bargaining agreements, wherein various arbitrators appear to discuss, with some measure of approval, the use of the standard of beyond a reasonable doubt where the offenses involve criminal intent. Of course, adversary counsel refer to other arbitration decisions where the standard of proof beyond a reasonable doubt was rejected by the arbitrator.
As far as the court can tell, Anziano has not cited any case where a court has ruled that the standard of proof required in an administrative proceeding conducted to consider whether an employee should be dismissed becomes heavier depending on the factual nature of the charges. This court does not accept the claim, advanced in the brief and in oral argument, that the more serious the charges, the heavier the burden of proof. The effect on Anziano, whether the charges are merely serious enough to constitute just cause for dismissal, or are serious enough to warrant dismissal and also possible criminal prosecution, is the same. In either case the result is loss of position based on proof of allegations which constitute just cause to terminate him.
 For example, when a charge of crime is at issue in a civil action, the threatened consequences of sustaining the accusation, though often uncommonly harmful to purse or prestige, are not generally as serious as in a prosecution of a crime. Accordingly, the modern American view is that in the interest of justice and simplicity a reasonable doubt CT Page 9591 measure of persuasion will not be imposed. Most courts have said that a preponderance of the evidence is sufficient, although some have increased the standard to "clear and convincing". Id. McCormick, Evidence (2nd Ed.) Section 341, p. 802.
Based on Professor McCormick's statement, one could argue that the standard of a preponderance of the evidence, which is what appellate counsel for the Board advocates, should have been applied. There is no persuasive authority in support of Anziano's claim that the standard of proof used in a criminal prosecution should have been used by the Board. It is the opinion of this court that when the Board was advised by counsel to use, and did use, the standard of clear and convincing evidence, that counsel and the Board went as far as this proceeding warranted, perhaps further, in seeing that Anziano received a fair hearing which satisfied all rights, including due process rights, that he had.
The fourth Legal Argument made in his brief by Anziano is that because of instructions given to the Board by Attorney Williams, that the Board placed a burden of proof on him to prove his defenses and explanations and therefore his due process rights were violated and he was deprived of a fair hearings.
The sole basis of this claim is the following "instruction" given to the Board by Mr. Williams at the conclusion of the evidence and before the Board commenced its deliberations:
 "A party asserting a given fact has the obligation of proving that fact. Thus, Mr. Kelly [as presenter of the charges] has the obligation of proving the elements of the charges, while Mr. Norris on behalf of Chief Anziano has the obligation of proving any defense, explanation, or fact which he may assert as to those charges." (Transcript, July 16, 1992, p. 6)
Anziano claims that this instruction was comparable to placing upon him the burden of proof which is on someone who raises an affirmative defense in a criminal case. The court does not agree. All this instruction did was tell the Board that if Anziano claimed the existence of any particular fact which might be a defense to, or explanation of, certain conduct which the Board heard in support CT Page 9592 of the charges, that he had the obligation to prove that fact. This instruction did not shift the burden of proof from the Board in any way. While, in hindsight, the word "defense" might better have been left out of the instructions, this does not have the consequences as claimed by Anziano.
Anziano did attempt to explain his conduct with respect some of the charges, attributing what he did to an accidental mistake or to inadvertence on his part. These claims amounted to an attempt on his part to show a defense or an explanation of what appeared to be rather persuasive evidence offered in support of the charges.
 It is fundamental in our law that the party asserting a fact has the obligation of proving it. See, e.g., Fishel v. Motta, 76 Conn. 197, 56 A. 558 (1903). "[W]henever the existence of any fact is necessary in order that a party may make out his case or establish his defense, the burden is on such party to show the existence of such fact." Holden Daly, Connecticut Evidence 53. This is generally so even when the fact to be proven is a negative one. McCormick, Evidence (2d Ed.) 337.
 The proper allocation of the burden of proof maybe distilled to a question of policy and fairness based on experience in different situations. Rustad v. Great Northern Ry., 122 Minn. 453, 456, 142 N.W. 727 (1913); James 
Hazard, Civ. Proc. (2d Ed.) 7.8 n. 1. A number of variables are considered in determining where the burden properly lies. One consideration is which party has readier access to knowledge about the fact in question.
Albert Mendel Son, Inc. v. Krogh, 4 Conn. App. 117, 124 (1985).
In his brief in support of this claim Anziano refers to several cases which deal with the prejudicial effect of misleading or incorrect instructions in jury cases. These cases are not persuasive because the court does not find that the instructions given by Attorney Williams were misleading, and this proceeding did CT Page 9593 not involve a jury deliberating in secret. In this case the Board deliberated on the record and in public. Any claim that these instructions misled the Board in such a fashion as to result in the Board shifting the burden of proof to Anziano is totally refuted by a review of the record. It is clear from the record that the Board was well aware that the burden of providing the allegations of the charges was on the presenter of the charges, that the Board was not misled by the instructions, and that the Board did hold the presenter of the charges to that burden. It is to be noted that neither in oral argument nor his brief has Anziano referred to anything in the voluminous record which could even arguably support a claim that the Board was misled by the instructions or improperly shifted the burden of proof to him.
The fifth Legal Argument is that Attorney Williams made rulings on matters that were factual in nature and thus invaded the decision-making function of the Board. The two matters referred to in the brief were the advice given to the Board by Attorney Williams that the definition of just cause contained in the employment agreement between Anziano and the Board was not the sole and exclusive basis for termination, and that Anziano was subject to the purchasing procedures of the Town of Madison. These two matters involve questions of law and the advice given by Mr. Williams did not amount to factual decisions.
Anziano also claims under this Legal Argument that he was "denied due process and a fair hearing when Attorney Williams instructed Commissioner Scharf that Scharf could not participate in deliberation of the just cause standard reading dismissal and that he could not vote on the issue of dismissal." The record demonstrates that Scharf participated in the discussions. He voted on every charge, and he voted on some specifications and not on others. When it came time to vote on whether just cause for the dismissal of Anziano had been established, he voted on three charges and abstained on four. It is also obvious that had he voted in support of Anziano on every charge, specification and conclusion, that the ultimate conclusions with respect to the various charges would not have been affected.
The last claim made under the Legal Arguments is that the failure of the Board to adopt regulations renders the hearing void ab initio. In making his claim Anziano relies on 7-276 of the Connecticut General Statutes which deals with the powers of Boards of Police Commissioners and provides in pertinent part as follows: CT Page 9594
 . . . Such boards shall have the sole power of appointment, promotion and removal of the officers and members of such police department, under such regulations as it adopts for the purpose, and such appointees shall hold office during good behavior and until removal for cause upon written charges and after hearing.
The Board concedes that regulations have not been adopted. However, the weakness in this claim is that the statute clearly does not mandate that the Board shall have adopted regulations before it conducts a hearing concerning possible dismissal of a chief of police. The use of the word "shall" is generally considered to be necessary in the statute in order for the statute to be construed as mandatory, and no such language is contained in the portion of the statute covering appointment, promotion and removal of police officers. In fact, if Anziano's position on this point is correct, one could argue, with just as much validity, that Anziano's own appointment as Chief of Police and all other appointments and promotions made by the Board when it has not adopted regulations are invalid. The short answer to this claim of Anziano is that the adoption of regulations by the Board is not required by the statute as a prerequisite to a valid hearing by the Board.
In fact, the Connecticut Supreme Court has very recently held that even in a situation where there is no question but that the adoption of regulations is mandated, the failure to adopt such regulations does not invalidate action by an administrative body unless the person claiming to be aggrieved makes a showing that some personal prejudice has resulted from the agency's failure to adopt the regulations.
 Judge Zoarski claims that the council violated his due process rights by conducting the proceedings against him without first having enacted comprehensive regulations as required by 51-51k(i). The failure to enact such regulations is conceded. An administrative agency's failure to comply with a statutory mandate to adopt procedural rules can be challenged, however, only by making a showing that some personal prejudice has resulted from the agency's failure to act. CT Page 9595 See Goldberg v. Insurance Department, 207 Conn. 77, 83-84, 540 A.2d 365 (1988), and cases cited therein; see also Eagle Hill Corp. v. Commission on Hospitals Health Care, 2 Conn. App. 68, 78, 477 A.2d 660 (1984). Judge Zoarski does not contend that he failed to receive fair notice of the charges against him or that he was deprived of a meaningful opportunity to defend himself against these charges. Due process is inherently fact-bound and requires only "such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Mathews v. Eldridge, 424 U.S. 319, 333-34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Council on Probate Judicial Conduct re: James H. Kinsella, supra, 207-208.
In this case, Anziano has failed to establish any prejudice resulting from the Board's failure to adopt regulations, even if the statute could be considered mandatory, which the court does not find.
One of the claims made in Anziano's brief is that the Board erred when it determined that the employment agreement of February 16, 1990 did not contain the sole and exclusive standards to establish just cause for dismissal. Whether the agreement contained the sole reasons for dismissal would seem to be academic since some of the provisions of the contract were included in the specifications of the various charges and were found by the Board as having been established. In any event the agreement does not indicate that it contains the "sole and exclusive" reasons as to what would constitute just cause. The agreement merely lists several grounds that if proven would be sufficient to constitute just cause for dismissal. To construe these grounds as being "exclusive" is contrary to the thrust of the entire agreement and the fact that it must be read in conjunction with 7-278. This court does not interpret the agreement as limiting the grounds which the Board may consider when it is conducting a hearing under7-278.
Anziano has touched on various other claims in his brief. The record fails to support and, in fact, in many cases rebuts these claims. CT Page 9596
Among these are claims that the hearings commenced without notice; that the Board voted to terminate Anziano at its meeting on December 11, 1991 before the hearings began; that the timeframes of7-278 were not complied with; that the Board acted outside the evidence and record in making its decision; that the Board should have referred the entire termination hearing to a referee; that the Board improperly hired two investigators; and that the Board proceeded on the incorrect belief that Anziano was obligated to comply with the purchasing procedures of the Town of Madison.
These various claims are easily disposed of. The investigation by the Board which was made in order to determine whether or not there was any basis upon which to proceed with formal hearings was properly conducted. Anziano was fully aware of all investigating activities. The hiring of two investigators to assist the Board at the investigation stage was fully warranted and proper. Anziano received more than adequate notice as required by7-278, and the timeframes of that statute were complied with. The Board was charged by law with conducting the hearings and it would have been improper to delegate this responsibility to any other individual or agency. There is absolutely nothing to support a claim that the Board acted outside the evidence and record in making its decision, and Anziano has not suggested anything specific to support this claim. The court is of the opinion that Anziano was bound to comply with the purchasing procedures of the Town of Madison, but even if he was not, it is of no consequence. The allegation that he violated those procedures was only one of several specifications in connection with each charge, and even if the finding on that allegation is removed on all five charges which were found proven, there are ample other specifications which support the conclusion on each charge.
During the course of oral argument counsel for Anziano requested the court to hear additional evidence before ruling on the appeal. No formal motion for permission to offer additional evidence was filed before the hearing and there is nothing in Anziano's brief indicating that such a request is being made or any basis for it. Section 7-278 provides that "[S]aid court shall review the record of such hearing, and, if it appears upon the hearing upon the appeal that testimony is necessary for an equitable disposition of the appeal, it may take evidence. . . ."
The determination as to whether the court should receive additional evidence is one calling for the exercise of the court's CT Page 9597 discretion. A similar statutory provision found in General Statutes 8-8 concerning appeals from decisions of zoning boards of appeals has been the subject of many court decisions.
 . . . Since there was a complete stenographic record of the proceedings before the commission, the offer of additional evidence in the trial court called for a determination, in the exercise of the court's legal discretion, as to whether that evidence was necessary for the equitable disposition of the appeal. General Statutes 8-8; Nielson v. Zoning Commission, 149 Conn. 410, 413, 180 A.2d 754. Under 8-8, the evidence was not admissible unless it was essential for the equitable disposition of the appeal. Tarasovic v. Zoning Commission, 147 Conn. 65, 70, 157 A.2d 103.
Young v. Town Planning Zoning Commission, 151 Conn. 235, 241
(1963).
In view of the voluminous record in this case covering twenty-two public sessions, the large number of exhibits and the ample opportunity afforded Anziano to introduce evidence during the course of the hearings, the court finds that Anziano has failed to establish any credible reason why additional testimony is necessary for an equitable disposition of this appeal, and the oral motion to that effect is denied.
The function of the court in considering the appeal in this case is proscribed by 7-278 as follows:
 . . . The court, upon such appeal, and after a hearing thereon, may affirm the action of such authority, or may set the same aside if it finds that such authority acted illegally or arbitrarily, or in the abuse of its discretion, with bad faith, malice, or without just cause.
The cases setting forth the limited nature of the review by the court of administrative actions are many and are consistent in that regard. CT Page 9598
The role of this court in an appeal of this nature is limited. The court does not retry the case, determine facts, or pass on the credibility of the witnesses. Arterburn Convalescent Home, Inc. v. Committee on State Payments to Hospitals, 176 Conn. 82, 86,405 A.2d 48, 50 (1978); Calandro v. Zoning Commission, 176 Conn. 439,440, 408 A.2d 229, 230 (1979). The review by this court consists of an examination of the record, and if the decision of the Board is reasonably supported by the record then this court must sustain that decision. Hansen v. Norton, 172 Conn. 292, 294, 374 A.2d 230,231 (1977); Madow v. Muzio, 176 Conn. 374, 376, 407 A.2d 997, 997
(1978). Whether this court would have reached the same decision as did the Board is of no consequence. The issue is whether the decision of the Board is supported by the record. Williams v. Liquor Control Commission, 175 Conn. 409, 414, 399 A.2d 834, 836
(1978). The court may not substitute its judgment for that of the Board. Wade v. Town Plan Zoning Commission, 145 Conn. 592, 595,145 A.2d 597.
The court has considered all of the claims advanced by Anziano and they are not persuasive. The decision by the Board was fully supported by the evidence, and the Board did not act illegally, arbitrarily, in abuse of its discretion, or with bad faith or malice. The Board had just cause based on the record to dismiss Anziano from his position of Chief of Police of Madison in accordance with the provisions of 7-278.
The appeal is dismissed.
William L. Hadden, Jr. Judge
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 9602