[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Ralph S. Colucci and Colucci Insurance and Associates appeal the decision of the defendant state insurance department revoking their insurance agent licenses and imposing civil fines. The department acted pursuant to General Statutes §§ 38a-774 (a) and38a-817 (b). The plaintiff appeals pursuant to § 4-183. The court finds the issues in favor of the defendant department.
On December 19, 1994, the defendant insurance department instituted a three-count administrative complaint against Ralph S. Colucci and Colucci Insurance CT Page 7855 and Associates, his insurance agency, alleging that they had committed unfair insurance practices in violation of General Statutes § 38a-816 and seeking to revoke their licenses to sell insurance in Connecticut. The complaint alleged that the plaintiffs had submitted numerous applications to an insurance company for policies for nonexistent insureds in Connecticut and New York City.
Pursuant to General Statutes § 4-182 and § 4-183, the department held a hearing on the complaint as a contested case on April 26, 1995. The hearing officer's June 22, 1995 "Memorandum of Findings and Recommendation" contained extensive findings of fact and conclusions of law. Thereafter, on July 5, 1995, the commissioner adopted the factual findings and conclusions of law of the hearing officer and rendered the department's final decision.
The essential facts are not in dispute and are set forth in the department's memorandum of decision. Over a period of several years beginning in 1986, plaintiff Ralph H. Colucci fabricated and submitted to Firemen's Fund Insurance Company seventy-seven applications for property insurance covering non-existent property and non-existent insureds. In doing so, he invented names and details concerning these fictitious people and places and systematically filled out numerous forms, all containing false information. Colucci then borrowed money from premium financing companies to pay the premiums in behalf of the fictitious applicants and was paid commissions by Fireman's Fund. Over the years, he repaid the premium loans from his personal funds. He never submitted any claims on the policies. Financially, the bottom line of these transactions was that the plaintiff paid out approximately $400,000 of his own money before the scheme collapsed; no one else suffered any monetary loss. Specifically, Fireman's Fund did not lose on the commission payments because the plaintiff had paid it more than the amount of the commissions, to cover the premiums on the policies, and the plaintiff repaid the premium financing companies.
Testimony at the administrative hearing indicated that the plaintiff conducted this bizarre scheme to generate quick money from commissions to cover some CT Page 7856 delinquent premium payments that were due Fireman's Fund for some other policies and to bolster the plaintiff's image as a successful producer in the eyes of the insurance company. Although the department did not make a specific factual finding with respect to the plaintiff's mental condition, it acknowledged in its decision that there is substantial evidence in the record that the plaintiff was suffering from mental illness during the time he operated the scheme. Nevertheless, Colucci testified at the hearing that he knew that his conduct was wrong.
Based on the facts summarized above, the department determined that the plaintiffs' conduct violated General Statutes §§ 38a-769, 38a-815 and 38a-816 (8). In accordance with §§ 38a-774 and 38a-817(b)(ii), the department revoked their insurance agent licenses and imposed monetary fines of $4,000 and $3,700. The relevant statutory provisions are as follows:
 § 38a-769 (c): Each applicant for a license shall furnish satisfactory evidence to the commissioner that he is person of good moral character and that he is financially responsible . . . .
 § 38a-774 (a): The commissioner, after reasonable notice to and hearing of any holder of a license issued by the commissioner, may suspend or revoke the license for cause shown. . . .
 § 38a-815: No person shall engage in this state in any trade practice which is defined in section 38a-816 as . . . an unfair or deceptive act or practice in the business of insurance . . . .
 § 38a-816: The following are defined as . . . unfair and deceptive acts or practices in the business of insurance: . . . (8) Misrepresentation in insurance applications. Making false or fraudulent statements or representations on or relative to an application for an insurance policy, for the purpose of obtaining a fee, commission, money or other benefit from any CT Page 7857 insurers . . . .
 § 38a-817 (b): If, after such hearing, the commissioner determines that the person charged has engaged in . . . an unfair or deceptive act or practice, . . . and if the act or practice is a violation of section 38a-816, the commissioner may at his discretion order any one or more of the following: (i) Payment of a monetary penalty of not more than one thousand dollars for each and every act or violation . . . (ii) suspension or revocation of the person's license if he knew or reasonably should have known he was in violation of said section . . . .
In finding that the plaintiff violated § 38a-769, the department reasoned that his conduct indicated he lacked the "requisite trustworthiness, good moral character and financial responsibility to hold a license in this state." In finding violations of §§ 38a-815 and38a-816, the department determined that the plaintiff made the false applications to Fireman's Fund for the purpose of obtaining commissions or other benefits and that he did so knowing the conduct to be a violation of the statute.
The department specifically found that the violations occurred in this state, notwithstanding that some of the policies were issued by an insurance company licensed in New York to insure property in New York.
Finally, with regard to the penalty to be impose, the department declined to consider Colucci's asserted mental illness as a significant factor. The department noted that the evidence showed multiple, systematic and deliberate acts of misconduct over a long period of time and that Colucci testified he knew it was wrong. Furthermore, the department held that the statutes permitting revocation of an insurance agent's license were designed to protect the public from dealings with agents who are not trustworthy.
In his brief, the plaintiff advances essentially three arguments in support of his appeal of the department's decision: (1) that the evidence in the record did not support the department's factual findings and legal conclusions; (2) that the department lacked jurisdiction to consider the applications for insurance policies to cover New York property and insureds; and (3) CT Page 7858 that the penalties imposed were excessive.
1. Findings and Conclusion
The plaintiff contends that he obtained no financial gain from his scheme. Since §§ 38a-815 and 38a-816, as they relate to this case, define an unfair or deceptive insurance practice as making a false application for insurance "for the purpose of obtaining a fee, commission, money or other benefit from any insurer," the plaintiff argues that his ultimately profitless acts do not constitute a violation.
The plaintiff's argument overlooks other facts in the record, essentially undisputed, and cited by the department as the bases for its determination that the plaintiff violated § 38a-815. First, the department found that the plaintiff obtained the advantage of improved cash flow, which was used to meet his immediate premium obligations to Fireman's Fund. Secondly, the fictitious policies helped the plaintiff to avoid "los(ing) face" with Fireman's Fund, the insurance company with which he regularly did a high volume of business. As the plaintiff's own psychological expert stated in his report, which is in the record, the plaintiff's scheme was "designed to keep himself on good terms with the Fireman's Fund, and maintain the professional reputation upon which he has always placed the highest value."
A basic principle of administrative law is that the scope of review by this court is very limited. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act . . . and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Board of Education v. Freedomof Information Commission, 208 Conn. 442, 452 (1988).
Furthermore, "Although the construction and interpretation of a statute is a question of law for the CT Page 7859 courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissioner of EnvironmentalProtection, 226 Conn. 358, 372 (1993). This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned.Starr v. Commissioner, supra 376.
In the present case, the department concluded that the increased cash flow from the commissions and the enhancement of the plaintiff's business reputation with his insurance carrier, both of which motivated him to submit the false applications, constituted "fee(s), commission(s), money or other benefit(s)" as those terms are used in § 38a-816(b). The court considers this interpretation to be completely reasonable. The plain intent of the statute is to outlaw the submission of a fraudulent application for insurance to an insurance company by an agent for his or her personal gain. The use of the phrase "or other benefit" indicates that the legislature did not intend to restrict the reach of the statute to situations where the agent obtained a quantifiable monetary gain. Rather, the intent is to prohibit fraud committed for any gain, intangible as well as tangible. The department reasonably found that the plaintiff in fact obtained the gain he sought when he committed the fraudulent acts, even though he later suffered an out of pocket loss. The plaintiff's argument on this issue may not be sustained.
The plaintiff also contends that the plaintiff's acts are not sufficient to support the determination that he lacks trustworthiness, good moral character and financial responsibility, at least as of the time that the department revoked his license. He points to evidence in the record of a long, previously unblemished career as a licensed insurance agent and to evidence that he is unlikely to commit such offenses again. In essence, the plaintiff asks this court to overrule the department's factual findings and inferences and its application of the provisions of § 38a-769 to those findings and CT Page 7860 inferences. This the court may not do.
General Statutes § 4-183(j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." And the Supreme Court has similarly restricted the court's role: "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission onHospitals Health Care, 182 Conn. 314, 318 (1980).
In the present case, the department's decision reveals that the hearing officer and commissioner duly considered the evidence of the plaintiff's business and civic record and his efforts at rehabilitation and that they weighed that evidence against the evidence of his fraud. The court may not overturn the decision they reached as a result of that deliberative process.
2. Jurisdiction of Department
The plaintiff's jurisdictional argument is that § 38a-815 limits the jurisdiction of the department to sanction only those unfair or deceptive insurance practices that are conducted in Connecticut. He claims that he used his New York address as the mailing address of some of the fictitious applicants and that this shows that the prohibited conduct took place in New York. This claim conflicts with the factual finding of the department that the applications were submitted through the plaintiff's insurance agency, which is based in Connecticut. The department also found that the plaintiff used Connecticut addresses for some of the bogus policies. Based on the evidence, the department found that the plaintiff perpetrated the fraud in this state. The court declines to overturn this factual finding.
3. Penalty
CT Page 7861
The plaintiffs' argument concerning the severity of the penalty imposed by the commissioner is that the revocation of their licenses exceeded what was reasonable or necessary and, in effect, was an abuse of discretion by the commissioner. The plaintiffs advance four principal claims in support of this proposition. First, they argue that Colucci does not deserve a punishment as severe as license revocation because his actions were motivated by psychological problems rather than by greed. Second, the plaintiffs point out that there was no finding by the department that the public or the Fireman's Fund was harmed as a result of the fraud, contending, in essence, that retribution is not appropriate. Third, the plaintiffs claim that the revocation is excessive because it is unlikely that Colucci's actions will ever be repeated. Since Colucci has been dropped as a Fireman's Fund agent and his emotional problems have been treated, they argue, there is little likelihood that the problems will recur. Finally, the plaintiffs cite the less severe action taken by the department to penalize an insurance agent in a similar case. See Goldberg v. Insurance Department,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 287375 (August 15, 1989, Langenbach, J.).
Prior to the August 1989 Superior Court decision in the Goldberg case, the Supreme Court decided an earlier appeal in that case. The Supreme Court decision provides a clear statement of the scope of this court's review of the department's action. In Goldberg v. InsuranceDepartment, 207 Conn. 77, 87, 540 A.2d 365 (1988), the Supreme Court held, "[w]hile the ultimate decision whether to revoke or suspend an insurance license is left to the discretion of the commissioner, such discretion must be exercised within statutory guidelines. Should the commissioner exceed the statutory limits, impose an unwarranted penalty, or abuse his discretion, the injured party has a right to judicial review. The decision to suspend or revoke must be made on an individual, case-by-case basis, only after investigation and a hearing, and only after the licensee has been given a full and fair opportunity to be heard." CT Page 7862
It is undisputed that §§ 38a-774 and 38a-817 (b)(ii) give the department discretion to revoke an insurance agent's license upon proof of violation of applicable statutes. The question is whether the department abused that discretion in this case. The court concludes that it did not.
The department found that the plaintiff knowingly and systematically violated applicable statutes that were designed to protect the public. He committed literally scores of such violations over a period of many years, all the while knowing his conduct to be illegal. The factors cited by the plaintiff in mitigation, summarized above, certainly argue in favor of a lighter penalty but they do not require one. The department considered those factors and ultimately determined that the public interest required that the plaintiff be banned from the insurance business. It is of little significance that a different insurance commissioner in a different case determined that a different penalty was appropriate. The focus of the department and this court must be on the present case.
While the court might have reached a different conclusion, it is not the court's role to substitute its judgment for that of the department in a case such as this where the department scrupulously followed statutory procedure, where the department's decision is supported by substantial evidence in the record, and where the penalty imposed is within the statutory range.
For all of the foregoing reasons, the appeal is dismissed.
MALONEY, J.